STATE of Wisconsin EX REL. NEWSPAPERS, INC., WTMJ, Inc., Green Bay Press Gazette, WISN–TV, Division of Hearst Corporation, WISN Radio and WBTT Radio, Petitioners,

v.

CIRCUIT COURT FOR MILWAUKEE COUNTY, the Honorable Arlene D. Connors, presiding, Certain Unnamed Prospective Defendants, District Attorney for Milwaukee County and K.M., Respondents.†

Supreme Court

*No. 85–0461–W. Argued April 30, 1985.—Decided June 26, 1985.*

(Also reported in 370 N.W.2d 209.)

† Motion for reconsideration pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the petitioners there was a joint petition for supervisory writ filed by *Robert A. Christensen, David Lucey* and *Foley & Lardner;* and *Matthew J. Flynn, Ralph A. Weber* and *Quarles & Brady,* all of Milwaukee, and oral argument by *Matthew J. Flynn* and *Robert A. Christensen.*

For the respondents, circuit court for Milwaukee county and the Honorable Arlene D. Connors, there was a response by *Thomas J. Balistreri,* assistant attorney general, with whom on the response was *Bronson C. La Follette,* attorney general, and oral argument by *Mr. Balistreri.*

For the respondents, certain unnamed prospective defendants, there was a joint response by *Stephen M. Glynn, James A. Walrath* and *Shellow, Shellow & Glynn, S.C.;* and *William M. Coffey* and *Coffey, Coffey & Geraghty,* all of Milwaukee, and oral argument by *Stephen M. Glynn.*

For the respondent, district attorney for Milwaukee county, there was a response by *E. Michael McCann,*

district attorney, and *Daniel D. Blinka,* assistant district attorney, and oral argument by *Mr. McCann.*

For the respondent, K.M., there was a response by *Daniel P. Kondos, Michael A. Pollack* and *Daniel P. Kondos Law Offices,* Milwaukee, and oral argument by *Michael A. Pollack.*

HEFFERNAN, CHIEF JUSTICE. Petitioners, various media organizations, have requested the issuance of a supervisory writ, pursuant to secs. 809.51 and 809.71, Stats.,[1] commanding the circuit court for Milwaukee county, the Honorable Arlene D. Connors presiding, to conduct in public a sec. 968.02(3), proceeding pending before her, entitled *In re Petition of K.M.,* criminal division case no. L–002–C. We hold that such proceedings are to be presumptively open to the public and may be closed only upon a showing of a substantial, compelling reason to do so. The judge in the instant case could not in the proper exercise of her discretion conclude that there was such a compelling reason. Therefore we grant this petition for a supervisory writ.

This matter concerns an alleged sexual assault by two professional football players (defendants) upon a female dancer (complainant) in the dressing room of a Milwaukee nightclub. It is sufficient here to note only that this incident has received substantial attention in the state media and the versions of the incident by each of the alleged participants vary. The defendants, who have not been identified by some of the state's media, claim the incident was consensual as demonstrated by the conduct of the complainant. She asserts there was no consent.

After investigation of the incident, the Milwaukee County District Attorney refused to issue a criminal

[1] Pursuant to the procedures in sec. 809.51(2), we did not deny the petition *ex parte,* but ordered written responses and oral argument.

complaint, not on the basis of a lack of probable cause but upon his perceived inability to prove guilt at trial. He stated publicly:

"After carefully considering all elements of this case, we have determined that the state will be unable to prove the guilt of the two men beyond a reasonable doubt. To file charges of third-degree sexual assault when we believe that a jury will find the men not guilty would not be in the interests of justice. A lengthy, bruising trial with consent as a defense ending with a not guilty verdict is not in the best interests of the young woman.

"This decision is not an expression of belief that the young woman gave consent. It is a statement, again, that on the evidence that would be presented to the jury, we will not be able to convince a jury beyond a reasonable doubt that consent was not given. We believe there was indecent and immoral sexual overreaching by the two men. We believe the conduct of the two men to be reprehensible, shameful and depraved. We believe that their status as professional football players had a role in psychologically exploiting the young woman."

The district attorney's proceedings throughout his investigation were not open to the public.

The complainant then petitioned the Milwaukee County Circuit Court to assign a judge to issue a complaint under sec. 968.02 (3) :

"If a district attorney refuses or is unavailable to issue a complaint, a circuit judge may permit the filing of a complaint, if the judge finds that there is probable cause to believe that the person to be charged has committed an offense after conducting a hearing. If the district attorney has refused to issue a complaint, he or she shall be informed of the hearing and may attend. The hearing shall be *ex parte* without the right of cross-examination."

The matter was assigned to Judge Connors.

She initially indicated she would take testimony from various witnesses under oath in the presence of the

court reporter, clerk, counsel, complainant, defendants and the public. However, upon objection by the defendants and after a hearing at which counsel for the media, complainant, defendants and the state were permitted to argue, Judge Connors reconsidered her decision.

The judge ruled that the proceeding did not involve the "sitting of a court" and thus did not have to be open under sec. 757.14, Stats.:

"The sittings of every court shall be public and every citizen may freely attend the same, except if otherwise provided by law on the examination of persons charged with crimes; provided, that when in any case a cause of a scandalous or obscene nature is on trial the presiding judge or justice may exclude from the room where the court is sitting all minors not necessarily present as parties or witnesses."

She held that this matter was only in the accusatory stage, no criminal complaint had been issued, and thus the proceeding was exempt from the statute. She also concluded that under *Bloomer v. Bloomer,* 197 Wis. 140, 221 N.W. 734 (1929), a judge has the discretion to close a courtroom to the public in the interest of justice where, under proper and compelling circumstances, salacious evidence may be presented. Judge Connors stated that under her "inherent power" to close proceedings, and because of the existence of "compelling" circumstances in this particular case, the hearing should be closed. Those circumstances Judge Connors stated were the following:

"1. Although complainant had asked for an open hearing, she did not realize the 'traumatic effect' that an open hearing would have on her testimony, and she and her family should not be subjected to such an 'ordeal.'

"2. Witnesses might be inhibited by the public's presence, thereby impeding the search for truth.

"3. The overall 'salacious, obscene testimony' that would be presented could be offensive to the public.

"4. If charges were eventually issued, the likely inordinate degree of pretrial publicity would make it difficult to impanel an impartial jury.

"5. This was only an accusatory hearing and even if no charges were eventually issued, revelation of the details of the incident to the public would cause defendants 'unnecessary agony or suffering.' "

Judge Connors also found that there were no reasonable alternatives to a closed hearing and added that her ultimate decision on the issuance of charges would be rendered in open court.

Petitioners then asked the court of appeals to issue a supervisory writ requiring the proceedings to be open. In an opinion reported at 124 Wis. 2d 778, 370 N.W.2d 295 (Ct. App. 1985), the court denied this request.[2] Despite a tradition of open court proceedings, the court concluded for several reasons that a sec. 968.02(3) proceeding did not presumptively have to be open to the

---

[2] In addition to this petition for a supervisory writ, petitioners also subsequently filed a petition for review of the court of appeals' decision. As noted in the Judicial Council Committee's Note of 1981 to sec. 809.71, both procedures provide an avenue to this court. One practical difference between the two is that a petition for a supervisory writ is set over for full consideration by this court on its merits upon the affirmative vote of four or more justices, whereas a petition for review is granted on the affirmative vote of only three justices. See *Wisconsin Supreme Court Internal Operating Procedures,* Wis. B. Bull. 21 (Aug. 1984). We need not dwell in this case on that or any additional differences between the two approaches. There were sufficient votes present to fully consider this case regardless of the manner chosen to bring it to this court's attention. We also would neither have granted a petition for review nor ordered responses and oral argument to the petition for a writ had we not thought the legal issues present were of sufficient importance and novelty to justify this court's attention. Further, either way we must decide as a matter of law whether these proceedings must be presumptively opened or closed and, if an exercise of judicial discretion is involved, whether that discretion was abused. Since the petition for review was therefore unnecessary in this case, it is dismissed.

public. Primarily, the statute itself did not expressly require openness nor did the function of the proceeding—basically a check on the district attorney's decision not to issue a complaint—constitute the sitting of a court. Accordingly, closure did not have to be justified by a "strict standard" requiring the existence of a "compelling" reason. Rather, it was within the judge's discretion to close and in this particular case that discretion was not abused. There was a "reasonable possibility" that an open hearing would result in the problems Judge Connors contemplated.

Resolution of this petition calls for us to resolve several issues.[3] First, is a sec. 968.02(3) proceeding presumptively open or closed? Second, given such a presumption, what are the legal factors to be considered by the circuit judge in determining whether it should be overborne in any given instance? Third, did this judge properly recognize such factors and was there a basis in the record for her discretionary determination?

We hold that a sec. 968.02(3) hearing is subject to the same presumption of openness that applies to most judicial proceedings in Wisconsin.[4] This is not based

---

[3] This opinion will not address any potential unconstitutionality of sec. 968.02(3) since it has not been raised by the parties at this stage of the proceedings. It could be questioned under the separation of powers doctrine whether the judicial branch of government should be able to interfere with the normal power of the executive branch to decide whether criminal charges should be issued. *But see State v. Washington*, 83 Wis. 2d 808, 266 N.W.2d 597 (1978) (constitutionality of John Doe proceedings upheld); *State ex rel. Kurkierewicz v. Cannon*, 42 Wis. 2d 368, 166 N.W.2d 255 (1969) (discretion of district attorney to prosecute held subject to legislative direction). The fundamental fairness or due process aspect of the entire procedure might also be challenged, given that the hearing by statute is *ex parte* without the right of cross-examination.

[4] This conclusion is limited to circumstances when the hearing occurs because the district attorney "refuses" to issue a complaint. The issue of the openness of a hearing when the district

on a conclusion that such a hearing is a "sitting of the court" within the meaning of sec. 757.14. Some pretrial activities have been deemed to be a sitting of the court. *See, e.g., State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis. 2d 220, 340 N.W.2d 460 (1983) (voir dire proceeding) ; *State ex rel. Newspapers, Inc. v. Circuit Court*, 65 Wis. 2d 66, 221 N.W.2d 894 (1974) (immunity hearing in John Doe proceeding). But a sec. 968.02(3) hearing is not a sitting of a court. The statute expressly provides that the proceeding is to be before a circuit judge and there is an express distinction between a judge and a court. *See* sec. 967.02(6), (7), Stats. (defining "judge" and "court"). This court has recognized that distinction in several cases including those cited above. Rather, the presumption of openness here is based upon other factors.

Initially, the statute itself contains no express provision for secrecy. Although a legislative direction that the hearing should be always closed might not necessarily be enforceable, it would at least have indicated that the legislature intended a presumption of secrecy. The statute didn't even indicate that the hearing "may" be secret as does sec. 968.26 pertaining to John Doe proceedings.

More important, a sec. 968.02(3) hearing is designed to be a method of scrutinizing the district attorney's decision to issue a complaint—a decision which the prosecutor usually makes out of the public eye. Thus the very purpose of the statute—to make possible the examination of the charging process in the rare instance— would be defeated if the procedures were closed for other than compelling reasons. Also, although this is not a formal sitting of a court, the judge is still per-

---

attorney is "unavailable" to issue a complaint, the other basis for invoking the procedures of sec. 968.02(3), is not before us.

forming a judicial-related function and is thereby charged with a responsibility for impartiality and fairness. The parties at such a proceeding expect that the judge will conduct a thorough hearing, examine all of the key witnesses and available relevant evidence, and render a dispassionate, unbiased decision on whether probable cause exists. As we noted in *La Crosse Tribune,* the great virtue in our American court system is that it is open to the public so that all will know that the courts, as instruments of government, are defending and not suppressing the rights of the people. 115 Wis. 2d at 242, 340 N.W.2d at 470. A hearing conducted under this statute is not only a check upon the prosecutor's decision not to file charges; additionally, it is a check performed under the tradition of judicial fairness and openness that our American system of law provides. Some jurisdictions have required openness under similar circumstances. *See, e.g., KFGO Radio, Inc. v. Rothe,* 298 N.W.2d 505 (N.D. 1980).

A presumption of openness, however, does not mean that a judge in conducting a sec. 968.02(3) hearing loses the power to close the proceedings under some circumstances. We have held on numerous occasions that a court has the inherent power to exercise the discretion to close a courtroom to the public. *See, e.g., La Crosse Tribune; Bloomer.* A judge conducting a sec. 968.02(3) hearing has the same authority and is subject to the same limitations on that authority.

The standard to be met before that discretion can be exercised is strict. We held in *La Crosse Tribune* that the circumstances necessary to trigger the discretion to close a judicial proceeding must be "compelling," "substantial," and "most weighty and overwhelming." 115 Wis. 2d at 234–36, 241, 340 N.W.2d at 467, 470. The particular factors that would justify closure in any given instance will vary depending upon the nature of the proceeding.

In a sec. 968.02(3) hearing, several factors might conceivably justify closure. The salacious nature of the evidence might embarrass the parties or somehow threaten the public interest. The complainant and other witnesses might want secrecy to avoid harassment, intimidation, etc., either from the defendants or the public, the likelihood of which would presumably be intensified by open proceedings. The potential defendant might desire closure to protect privacy and reputational interests, which could be jeopardized by openness should a criminal charge not result. There is a public policy interest in protecting the reputations of citizens. *Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 430, 279 N.W.2d 179, 185 (1979). In this type of procedure there is no right to any rebuttal or to present counter evidence. The resulting possibility of unrefuted false accusations would certainly not serve reputational interests. Finally, as suggested in *La Crosse Tribune,* a legitimate fear might exist that substantial publicity would hinder efforts to provide a fair trial should criminal charges be eventually issued. In any given instance, other appropriate reasons might exist.

Whatever the particular reasoning, we indicated in *La Crosse Tribune* that initially the trial judge should recite on the record the factors that compel closure and why such factors override the presumption of openness. The entire process must be conducted in public and demonstrably must be a rational one. The rationality of it must be shown on the record, evincing that the conclusion was reached on specific facts of record or which are reasonably derived by inference from the record. 115 Wis. 2d at 236–37, 340 N.W.2d at 468. The conclusion that factors weighing in favor of closure are present must be based on articulable facts known to the court rather than unsupported hypotheses or conjecture. *See*

*generally U.S. v. Edwards,* 672 F.2d 1289, 1294 (7th Cir. 1982).

Thus, once factors considered by the judge to be sufficient to compel closure are stated, the focus of appellate review is whether the judge abused her discretion in deciding there were sufficient facts of record to justify the legal conclusion that those factors were present. A discretionary act to be upheld must be the product of a rational mental process by which the facts of the record and the law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination. *Jasper v. Jasper,* 107 Wis. 2d 59, 64, 318 N.W.2d 792, 795 (1982). In reviewing an alleged abuse of discretion the question is not whether the appellate court would have reached the same decision, but whether under the facts and with the application of the correct legal standards, a reasonable trial judge could have reached a particular conclusion. *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1970). An appellate court will not find an abuse of discretion unless it is evident that there was no rational basis for the trial court's decision, that is, a reasonable judicial mind in light of the law and the facts could not have reached the conclusion it did. *Wisconsin Public Service Corp. v. Krist,* 104 Wis. 2d 381, 395, 311 N.W.2d 624, 631 (1981).

In the instant matter, we believe that all of Judge Connor's reasons might in some circumstances be compelling enough to order closure of the proceeding. However, none is sufficiently supported by the record in this case to provide a basis for her discretionary action.

Her concern over the potential traumatic effect of an open hearing upon this complainant was not justified, although concern over such injury to a sexual assault victim is usually appropriate. Compainant appeared by counsel and expressly advocated an open hearing. Under

the circumstances, Judge Connors was therefore without factual justification, indicated on the record or capable of being reasonably inferred from the record, to conclude that closure was compelled by the best interests of this complainant.

We recognize, however, that society's legitimate concern in a criminal case is not only to impose criminal sanctions and to seek the truth, but also to make sure that the victim is not damaged or injured further. Here, complainant has already requested the additional public scrutiny of these proceedings. In the event a complaint is issued, complainant will have her day in court. At the present stage of the proceedings, in view of the publicity which complainant has not avoided, it would not appear that closure is needed for her protection. Certainly the need to protect her in light of the circumstances does not override in a compelling fashion the public nature of the proceedings.

While Judge Connors indicated that an open hearing would intimidate witnesses and impede the search for the truth, she failed to state the facts upon which such a conclusion could be reached. To the extent that her concern was with the chilling effect that publicity might have upon the complainant, it would appear, on the basis of the facts stated above, that the complainant, who sought publicity in this matter, would not likely be intimidated. We do not overlook the possibility that the very interest of the complainant in keeping the procedure public might have caused the trial judge to cast a jaundiced eye upon the complainant's public appearance. Regardless, while the reason given could be a compelling one in some instances for closure, here there was an insufficient factual predicate for reaching the conclusion to close on that basis.

The judge further feared that the salacious, obscene testimony that likely would be presented could be of-

fensive to the public. However, the details of this alleged assault are no more lurid than that of most sexual assaults. Only the identity of the participants makes this particular episode a matter of unusual public concern. The facts of the case are not in any way more salacious or obscene than dozens of other sordid episodes which are considered by our courts on a daily basis. The public's primary concern is with protection of minors from such information. *See* sec. 757.14. Judge Connors could have satisfied this concern by closing the proceedings to minors rather than to the entire public. As for adults who might be offended, the court has no obligation or prerogative to protect them from the truth unless some other compelling circumstance requires a closed hearing.

Judge Connors' concern over potential inability to obtain a fair trial should charges be issued is also not an adequate reason for closure within the context of this case. Defendants' counsel claimed that an open proceeding would result in publicity to the extent that a fair trial would be jeopardized. However, the record reflects that a significant amount of publicity has already been generated in this case. It is not evident that the additional publicity given to this proceeding would render a fair trial any more unattainable than it might already be. Nor is it clear that a fair trial would indeed be jeopardized. The law requires impartial—not ignorant—jurors. Despite the publicity, protections such as voir dire should insure that enough impartial jurors from a large metropolitan area like Milwaukee can be found. Other alternatives exist to assure a fair trial such as changes of venue, instructions and admonishments to the jury, etc.

In any event, the potential threat to a fair trial arising out of an open sec. 968.02(3) hearing in this instance was much too speculative to justify closure.

Nevertheless, we are cognizant that in fact undue publicity could result in a less than due process trial. In addition to the protective procedures stated above, the last resort, of course, after conviction and proper post-trial motions, is to set aside the verdict because of undue and unfair publicity. This is a responsibility that the media must face up to in handling sensitive court proceedings. But that fact in this case under these circumstances does not in itself compel a closed hearing.

We finally come to the potential for further damage to defendants' reputation by an open proceeding. Their counsel asserted that their reputations would be further irreparably damaged by a public hearing, even if no criminal charges were ultimately issued. Judge Connors agreed; because the proceeding was in essence to be an accusatory hearing to decide only whether criminal charges should be issued, revelation of the intimate details of the incident would certainly not serve their reputational and privacy interests. However, we do not believe she could properly have reached this conclusion based on the circumstances as then existed. .

By the time Judge Connors faced the closure issue, defendants' reputations had already been significantly besmirched based on the limited information before us alone. Although without identifying them, the district attorney had publicly stated that, at the very least, they engaged in "indecent and immoral sexual overreaching" that was "reprehensible, shameful, and depraved" and "psychologically exploit[ive]." The district attorney further publicly implied that defendants conceded sexual activity had taken place and the only issue was whether complainant had consented; thereby suggesting that defendants themselves admitted illicit conduct. Newspapers in both Milwaukee and Green Bay, two of this state's largest population centers, had printed dozens of

articles disclosing many of the details of the alleged incident; two of those newspapers named defendants.

We cannot conclude that open sec. 968.02(3) proceedings could reasonably have been foreseen to damage defendants' reputations significantly further. If open proceedings are followed by the issuance of criminal charges, their reputations will obviously be subject to substantial additional damage, far in excess of any injury possible from merely this preliminary process. If no criminal charges result, their reputational and privacy interests will have suffered little, if any, damage beyond that which has already occurred. If anything, they will finally be free of the accusation of having committed a crime. Under these circumstances, the potential for reputational injury is minor and not of a compelling stature such that closure is justified.

In conclusion, we hold that a sec. 968.02(3) proceeding is to be opened to the public in the absence of a compelling reason for closure. There were insufficient facts of record to justify this judge's decision to close and therefore an abuse of discretion occurred.

*By the Court.*—The petition for a supervisory writ is granted. The stay of further proceedings before the circuit judge in *Petition of K.M.* ordered by this court on March 7, 1985, is vacated. It is ordered that further proceedings in that matter shall be conducted in accordance with this opinion. The petition for review from the court of appeals' decision is dismissed. No costs are awarded to any party.

LOUIS J. CECI, J. (dissenting). In this case, Judge Connors exercised her inherent power as a judge and determined that justice required that this precomplaint hearing be closed to the public. I must dissent in this case, because I disagree with the majority's holding that

precomplaint hearings, pursuant to sec. 968.02(3), Stats., are presumptively open to the public. I also object to the majority's substituting its judgment for that of Judge Connors in holding that there are insufficient facts to justify Judge Connors' decision to close the precomplaint hearing. I would deny the petition for a supervisory writ and affirm the decision of the court of appeals, which held that no presumption of openness attaches to precomplaint hearings and that Judge Connors did not abuse her discretion in closing the hearing.

First, the majority provides two reasons for its holding that sec. 968.02(3) hearings are presumptively open to the public: (1) The statute itself contains no express provision for secrecy, and (2) the purpose of the statute—to scrutinize the district attorney's decision to issue a complaint—would be defeated if the hearing were closed for other than compelling reasons. Pages 506, 507. I do not believe that these reasons justify the broad holding that sec. 968.02(3) hearings are presumptively open to the public. The majority erroneously reads something into the statute that clearly was not supplied in the statute by our legislature.

I am of the opinion that our legislature did not intend that the hearing be presumptively open to the public. Although the statute does not contain an express provision for secrecy, it also does not mandate that the hearing be open. I start with the premise that the public has no constitutional right to attend a precomplaint hearing. There is a limited public right to access to criminal trials under the first amendment to the United States Constitution. *See, Globe Newspaper Co. v. Superior Court,* 457 U.S. 596 (1982). However, pretrial proceedings can often be closed to the public. *See, Gannett Co. v. De Pasquale,* 443 U.S. 368 (1979) (hearing on suppression of evidence). Exceptions ·to this have arisen only under limited circumstances that are not

present in this instance. *See, e.g., Press-Enterprise Co. v. Superior Court,* —— U.S. ——, 104 S. Ct. 819 (1984) (*voir dire* examination of prospective jurors in a criminal case). No case has extended the nonabsolute public right of access to a proceeding occurring prior to the issuance of a criminal complaint, such as here.

Additionally, the public has no statutory right to attend a precomplaint hearing. Section 757.14, Stats., mandates that "[t]he sittings of every court shall be public and every citizen may freely attend the same . . . ." The majority agrees that this statute does not apply in this case because a sec. 968.02(3) hearing is not a "sitting of a court." Page 506. If the legislature had intended this hearing to be open, I believe it would not have called for the proceedings to be conducted merely by a judge. Also, sec. 807.04, requires that "[a]ll trials, and all hearings at which oral testimony is to be presented, shall be held in open court." This statute is equally. inapplicable to precomplaint hearings, because sec. 968.02(3) does not require that testimony be given under oath or affirmation. Finally, if open proceedings were contemplated by the legislature, it would not have had to specifically provide in the statute that the district attorney could attend the hearing. A construction which makes statutory language superfluous is to be avoided. *Wis. Elec. Power Co. v. Public Service Comm.,* 110 Wis. 2d 530, 534, 329 N.W.2d 178 1983). Since our legislature has not explicitly required that precomplaint hearings be open, the judge should not be restricted from exercising his or her inherent power in ordering closure of the precomplaint hearing. *See, State ex rel. La Crosse Tribune v. Circuit Ct.,* 115 Wis. 2d 220, 234–35, 340 N.W.2d 460 (1983).

Second, the legislative history of sec. 968.02(3), Stats., supports the conclusion that precomplaint hearings are not presumptively open. Section 968.26, provides for a

John Doe hearing which, by the words of the statute, allows for a secret hearing. Sections 968.02(3) and 968.-26 share identical roots. This court has construed the predecessor of these statutes as authorizing a closed, secret hearing. *State ex rel. Kowaleski v. District Court*, 254 Wis. 363, 370, 36 N.W.2d 419 (1949).

Third, the nature of a sec. 968.02(3) hearing does not require that the hearing be open. Section 968.02(3) provides an avenue for a complainant in two separate circumstances. A circuit judge may permit the filing of a complaint if a district attorney refuses to do so or if he is unavailable to do so. The majority presumes that the judge cannot check the authority of the district attorney unless the precomplaint hearing is open. I disagree. Under sec. 968.02(3), it is the duty of the judge to determine if there is "probable cause to believe that the person to be charged has committed an offense . . . ." There is no reason to believe that the judge cannot conduct a thorough hearing and make an unbiased determination of probable cause in the absence of the press and the public. In issuing complaints, the district attorney uses his or her discretion to protect the reputation of those not yet charged with a crime. The reputation of such persons is of equal importance in a precomplaint hearing before a judge, especially given the fact that they have no right of cross-examination. *See,* sec. 968.02(3). The judge at a precomplaint hearing acts as a surrogate district attorney; he or she must make a determination of probable cause. It would be unrealistic to require that the prosecutor's charging conference be open to the public and, in the same regard, neither should a sec. 968.02(3) hearing be open to the public.

Finally, and perhaps most importantly, the principles of fundamental fairness necessitate a holding that sec. 968.02(3) hearings are not presumptively open. Although historically, adversarial proceedings are open to

the public, precomplaint hearings are not adversarial. The majority reasons that sec. 968.02(3) hearings are subject to the same presumption of openness that applies to most judicial proceedings in Wisconsin. Page 505. However, the majority fails to distinguish precomplaint 'from post-complaint proceedings. I note that other criminal *ex parte* proceedings in this state are traditionally closed to the public. *See*, sec. 968.12, Stats. (search warrants); sec. 968.04 (arrest warrants); secs. 968.28–968.31 (interception of wire or oral communications); sec. 756.147 (grand jury proceedings); and sec. 968.26 (John Doe proceedings). Again, no case has extended the nonabsolute public right of access to a proceeding occurring prior to the issuance of a criminal complaint.

In this case, charges have not yet been issued against the accused. The accused are not yet defendants in this action, although the majority improperly identifies them as defendants (at page 512). The accused in this case desire closure to protect their privacy and reputational interests, which would be jeopardized by an open hearing should a criminal charge not result. *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 430, 279 N.W.2d 179 (1979), stressed that there is a public policy interest in protecting the reputations of citizens. Section 968.02 (3) mandates that "[t]he hearing shall be ex parte without the right of cross-examination." There is no right to any rebuttal nor the right to present counter evidence in the course of this *ex parte* hearing. False accusations could be made in detail with no possibility of contemporaneous rebuttal. If this stage of the criminal process were public, before there is even a finding of probable cause or a determination to issue a charge, the potential for damage to reputational interests would be enormous.

For these reasons, I would hold that sec. 968.02(3) does not require that precomplaint hearings be open to the public. I believe that the majority is wrongly legislating when it holds to the contrary. Thus, the issue on appeal becomes whether the judge abused his or her discretion in closing the hearing. Contrary to the majority's position, I do not believe that this court must find a substantial, compelling reason to close the hearing before it will affirm the judge's discretion of closure. Page 501. Therefore, I move to the issue of whether Judge Connors abused her discretion in closing this hearing.

The majority summarizes the reasons provided by Judge Connors as to why she believed the hearing in this case should be closed. Pages 503, 504. I believe that the last factor is sufficient to compel closure in this case, which is the following:

"5. This was only an accusatory hearing and even if no charges were eventually issued, revelation of the details of the incident to the public would cause defendants 'unnecessary agony or suffering.' " Page 504.

I agree with Judge Connors and the accused that their reputations would be further irreparably damaged by a public hearing, even if no criminal charges were ultimately issued. As I have stressed above, these accused have no right to rebut or present counter evidence in the course of this proceeding. False accusations could be made in detail, with no possibility of contemporaneous rebuttal.

The majority falsely assumes that because the district attorney in this case has publicly released his statement and because the press has printed dozens of articles disclosing the details of the alleged incident, no further harm can come to the reputations of these accused. I

strongly disagree. First, further significant publicity is inevitable if the hearing is open. Second, although two newspapers have disclosed the names of these accused, who are not yet defendants, as the majority suggests, these disclosures were limited. The names of these accused have not been highly publicized.

I believe that injury to the reputation and privacy of these accused can be, as a matter of law, a compelling reason for closing a sec. 968.02(3) hearing. While another judge or the majority in this case might reasonably have reached a different conclusion, there were sufficient facts in the record upon which Judge Connors could reasonably conclude that the protection of reputational and privacy interests of these accused compelled closure. I strongly object to the majority's substituting its judgment for that of Judge Connors. Media counsel conceded before the judge that defendants were people of "substantial reputation." The record reflects that one of the papers owned by petitioner Newspapers, Inc. has stated it will publicly identify the accused if there is "some official action or court proceeding" that names them. An open sec. 968.02(3) hearing will do just that, regardless of whether or not charges are issued here. Based upon the facts as developed to date, the arguments of their counsel and the reasonable inferences to be drawn therefrom, Judge Connors could in the exercise of discretion conclude that given their reputations and the likely additional damaging publicity an open sec. 968.02(3) hearing would engender, there was a compelling reason for a closed proceeding. Her decision to do so was not an abuse of discretion, particularly in light of the fact that the procedure, which is only a charging matter in the nature of a prosecutor's conference, does not permit any counter evidence. The procedure is not a mini-trial, for only the complainant has the right to produce evidence. When this stage of the criminal process

is made public, before there is even a finding of probable cause or a determination to issue a charge, the threat to reputational interests is enormous, not only for the target of the accusation but also for the accuser. Victims should be able to discuss their perceived grievances with a judge with the assurance that their accusations will not be spread before the public if the judge declines to authorize the issuance of a complaint.

The legal principles involved are not dependent upon the veracity of the accusations by this publicity-seeking "complainant." No matter what the outcome is of these open proceedings, these accused are obliged to submit to the odium of the accusations, based, perhaps, upon insufficient evidence, without ever having, as in a trial, the opportunity to meet their accuser and reply to her attack. This situation is one that should offend everyone's sense of fair play and is certainly not conducive to the decent administration of justice.

The holding of the majority smacks of the star chamber inquisitions, condemning without the opportunity to be heard, which weakens reputational and privacy rights of those not yet charged with a crime. In our republic of freedom-loving people, reputational interests and privacy, rights should be paramount in precharging inquiries.

The petition for a supervisory writ should be denied in this case, and, therefore, I must dissent.

I am authorized to state that JUSTICE WILLIAM G. CALLOW joins in this dissenting opinion.

WILLIAM A. BABLITCH, J. (dissenting). I agree with the majority that a presumption of openness attaches to a hearing under sec. 968.02, Stats. Open government is a significant and powerful check on the potential for abuse of power by any branch of government, including the judiciary. The vitality of democracy is

dependent upon an informed citizenry. The public does, indeed, have a "right to know."

That right to know, however, must always be balanced against equally compelling considerations involving individual rights. The legislature, in enacting the open meetings law, recognized that balance when it created certain exceptions to presumptively open governmental meetings that involve "the investigations of charges against specific persons . . . which, if discussed in public, would be likely to have a substantial adverse effect upon the reputation of any person . . . involved in such problems or investigations." Section 19.85(1)(f), Stats. Similarly, this court has recognized that balance in providing that a judicial proceeding may be closed only for substantial and compelling reasons. *State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis. 2d 220, 340 N.W.2d 460 (1983).

When individuals of high visibility and public stature are involved in the criminal system, there is always concern among the general public that those people will be accorded privileged treatment.[1] This privileged treatment must not be allowed to happen. People of prominence, of high public visibility, are entitled to no more protection than anybody else. But in our efforts to assure that, we must also be mindful that they are entitled to no less. I conclude that an open hearing under the circumstances presented here would provide less protection to the accused than that to which they are entitled. Given the fundamental unfairness of the one-sided procedures mandated by the statute, along with the intensity of the publicity and the interest of the public that this hearing will generate statewide, I conclude that the accused's rights to a fair trial, if charged, will be

---

[1] This case involves two highly visible professional football players. It could, in a future case, involve highly visible employers, supervisors, public officials, clergy, business men, business women, etc., etc., etc.

gravely imperiled; if they are not charged, the damage to their privacy and reputational interests will be enormous. Therefore, I conclude that while a sec. 968.02, Stats., hearing is presumptively open, this particular hearing must be closed to the public.

The proposition that the procedures of a sec. 968.02, Stats., hearing offend basic notions of fairness can hardly be disputed. The protections that our adversarial system provide for determining truth are notably absent: the accused has no right to be heard in any manner. The accused has no right to testify, no right to call witnesses, no right to present evidence, no right to cross-examine the accuser, no right to counter any false allegations. The unfairness of the absence of the right to be heard is magnified by the lack of restraints on the accuser. The accuser, in a public forum, is unrestrained by the normal constraints of our laws of libel and slander. That is because the testimony in a public proceeding such as this is privileged under the law. *Bergman v. Hupy*, 64 Wis. 2d 747, 750–54, 221 N.W.2d 898 (1974).

That the accusations of the accuser, be they true or false, libelous or not, will be reported statewide in excruciating detail in all the media, cannot be denied. This case has already generated intense media interest. It has all the ingredients of a Sidney Sheldon best-seller: sex, booze, an exotic-dancer, professional football players. The reporting of the accuser's allegations will not just be confined to the immediate area of the offense; it will be statewide. Unfortunately for the accused, however, it will be the accuser's uncontradicted accusations, bereft of the benefit of cross-examination and counter evidence, that will be read, heard and seen by the citizens of the entire state. Normally, a change of venue can protect an accused from the effects of extensive pretrial publicity. But where can these accused go, after this, for

an impartial jury if they are subsequently charged and tried? The majority correctly points out that the law requires impartial, not ignorant jurors. Page 511. However, the one-sided publicity that this hearing will produce can hardly result in impartial jurors. Potential jurors around the state will certainly have knowledge of the complainant's version of the offense; unfortunately, it will be the type of knowledge that our normal adversarial process would *never* allow.

But now consider the alternative scenario: that after this public hearing and resultant publicity the judge decides that formal charges are not justified and therefore will not be filed. Given the nature of the charges here, it will be small consolation to the accused and their families that, as the majority states, "they will finally be free of the accusation of having committed a crime." Page 513.

As the majority rightly points out, the accused's reputations have already been significantly besmirched. That is not a sufficient justification, however, to allow this besmirching to continue. If anything, it is reason to stop it, before there is complete devastation, economic and personal, to the accused and their families. To this point, the public has not been subjected to just the one-sided accusations of the accuser. Although there has been substantial publicity, many newspapers and other media have not disclosed the names of the accused. An open hearing will end all of that. If there is merit to the complainant's charges, this will all come out eventually; if there is no merit to her charges, the accused deserve the little privacy and reputational interests that are still left to them and their families.

In sum, the procedures provided for in the statute are offensive to basic notions of fundamental fairness. Whether or not these procedures are violative of constitutional guarantees is a question that has not yet been

presented to this court. Meanwhile, the legislature could appropriately address the fairness of the procedure, not by closing the hearing, but by allowing a more balanced public hearing. The value of a proceeding which provides a check on the prosecutor's decision to refuse to file a charge is evident. Clearly the complainant in this case is entitled to have the district attorney's charging decision put before judicial scrutiny. The legislature can easily accommodate the interests of the accuser with those of the accused by providing greater procedural safeguards in this proceeding.

The accused, because of their public prominence, are entitled to no more protection than anybody else. They are, however, entitled to no less. I conclude there are substantial and compelling interests present that go directly to the fundamental rights that we all enjoy. The principles of the majority opinion will apply not only to the unnamed accused in this case, but to anybody in the future who might find themselves accused of a crime by someone who asserts before a judge, after a district attorney has turned them down, that he or she has been criminally wronged. That should give everyone pause. Accordingly, I dissent.