STATE of Wisconsin EX REL. UNNAMED PETITIONERS, Petitioners,

v.

The Honorable Arlene D. CONNORS, Circuit Judge of Milwaukee County, Branch 37, Respondent.

Supreme Court

*No. 86-0290-W. Argued September 4, 1986.—Decided March 6, 1987.*

(Also reported in 401 N.W.2d 782.)

For the petitioners there were joint briefs by *Stephen M. Glynn, James A. Walrath* and *Shellow, Shellow & Glynn, S.C.*, and *William P. Coffey* and *Coffey, Coffey & Geraghty*, all of Milwaukee, and oral argument by *James A. Walrath* and *William P. Coffey*.

For the respondent the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with

whom on the briefs was *Bronson C. LaFollette*, attorney general.

HEFFERNAN, CHIEF JUSTICE. This opinion considers whether sec. 968.02(3), Stats.,[1] which authorizes a circuit judge, upon a finding of probable cause, to permit the filing of a criminal complaint if the district attorney refuses or is unavailable to issue a complaint, is unconstitutional because it allows an encroachment by the judiciary upon the executive branch's power to decide whether criminal charges should be filed.

We conclude that the statute is unconstitutional beyond a reasonable doubt.[2] It violates the separation-

---

[1]"If a district attorney refuses or is unavailable to issue a complaint, a circuit judge may permit the filing of a complaint, if the judge finds there is probable cause to believe that the person to be charged has committed an offense after conducting a hearing. If the district attorney has refused to issue a complaint, he or she shall be informed of the hearing and may attend. The hearing shall be ex parte without the right of cross-examination."

[2]In *Milwaukee County v. Proegler*, 85 Wis. 2d 614, 629–30, 291 N.W.2d 608 (Ct. App. 1980), the court of appeals discussed the burden of proof to be borne by one challenging the constitutionality of a statute:

"The rule has been often-stated that a statute is presumed to be constitutional and that a heavy burden is placed on the party challenging its constitutionality. *State v. Hart*, 89 Wis. 2d 58, 64, 277 N.W.2d 843, 846 (1979).

"One who challenges a statute's constitutionality carries a heavy burden of persuasion. He must overcome the presumption of constitutionality described in *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973):

"'. . . It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability.

of-powers principle of the Wisconsin Constitution that prohibits a substantial encroachment by one branch on a function that is within the delegated province of another branch.[3] A transfer of substantial power from one branch of government to another violates the separation-of-powers doctrine. *State v. Lehtola*, 55 Wis. 2d 494, 498, 198 N.W.2d 354 (1972). Balance between the three branches must be maintained in order to preserve their respective independence and integrity. *Layton School of Art & Design v. Wisconsin*

Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts ....'

"The court cannot reweigh the facts as found by the legislature. If the court can conceive any facts on which the legislation could reasonably be based, it must hold the legislation constitutional. [Citation omitted.] *State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 506, 261 N.W.2d 434, 441 (1978)."

[3]The state legislature's interpretation of our tripartite form of government is found in sec. 15.001, Stats. 1983, which provides:

"15.001 Declaration of policy. (1) THREE BRANCHES OF GOVERNMENT. The 'republican form of government' guaranteed by the U. S. constitution contemplates the separation of powers within state government among the legislative, the executive and the judicial branches of the government. The legislative branch has the broad objective of determining policies and programs and review of program performance for programs previously authorized, the executive branch carries out the programs and policies and the judicial branch has the responsibility for adjudicating any conflicts which might arise from the interpretation or application of the laws. It is a traditional concept of American government that the 3 branches are to function separately, without intermingling of authority, except as specifically provided by law."

*Employment Relations Commission*, 82 Wis. 2d 324, 348, 262 N.W.2d 218 (1978). Thus, the issue in separation-of-powers cases is whether the statute in question "materially impairs or practically defeats" the proper function of a particular branch and the exercise of powers delegated to it. *See, In Matter of E.B.*, 111 Wis. 2d 175, 185, 330 N.W.2d 584 (1983). A statute may not allow one branch to unduly burden or substantially interfere with another branch's exercise of authority. *Id.* at 184. *See also, State v. Holmes,* 106 Wis. 2d 31, 41–43, 315 N.W.2d 703 (1982). The statute with which this court is presently concerned permits an encroachment which is not only substantial, but total.

In the case before us, the statute would allow the circuit judge to permit the filing of a complaint after the district attorney, in the exercise of his discretion, determined that no criminal charge should issue. Under the statute, the judge can commence the action after completely substituting her judgment for that of the prosecutor. The statute provides no guidelines for the action except for the legal standard of "probable cause."

The case is before this court on a writ of prohibition, by which the relators seek to prohibit Judge Connors from holding the hearing contemplated by sec. 968.02(3), Stats. We grant the writ.

In prior proceedings before this court arising out of the same incident, the constitutionality of sec. 968.02(3), Stats., was not challenged. We held that the sec. 968.02(3) proceedings were presumptively to be open to the public. *See, State ex rel. Newspapers, Inc. v. Circuit Court for Milwaukee County*, 124 Wis. 2d 499, 370 N.W.2d 209 (1985).

The facts pertinent to both proceedings reveal that two professional football players (the relators

herein) allegedly assaulted a female dancer (the complainant in the underlying action) in a dressing room of a Milwaukee night club. The district attorney for Milwaukee county, after an investigation, decided not to issue a criminal complaint. He did so "not on the basis of a lack of probable cause but upon his perceived inability to prove guilt [beyond a reasonable doubt] at trial." *Newspapers, supra* at 502. It was conceded during the course of oral argument in this case that the district attorney's statement setting forth his decision to decline prosecution gave 19 reasons for his action.

Upon the district attorney's refusal to prosecute and upon the petition of the complainant, the matter was assigned to Circuit Judge Arlene D. Connors for sec. 968.02(3), Stats., proceedings. When Judge Connors directed that the proceedings be closed, the action for the writ considered in *Newspapers, supra,* was brought to this court. Upon the remand to Judge Connors, the relators have challenged the constitutionality of sec. 968.02(3) on the grounds that it violated the Wisconsin Constitution's separation-of-powers doctrine and petitioned for the writ of prohibition. Pending resolution of this issue, we have stayed the proceedings. As a consequence of our conclusion that sec. 968.02(3) unconstitutionally permits the exercise of executive branch power by the judicial branch which constitutes a substantial encroachment upon the power of the executive branch, we grant the writ of prohibition.

We first consider the role and function of the district attorney in Wisconsin law. The attorney general concedes that the district attorney is an officer of the executive branch of state government,

which branch, under the aegis of the governor, has the duty under the constitution to "take care that the laws be faithfully executed." Wis. Const. Art. V, sec. 4. The district attorney is not merely an administrative officer with only ministerial duties (*Application of Bentine*, 181 Wis. 579, 196 N.W. 213 (1923)), but a public officer "retained by the public for the prosecution of persons accused of crime, in the exercise of sound discretion to distinguish between the guilty and innocent, between the certainly and the doubtfully guilty." *Wight v. Rindskopf*, 43 Wis. 344, 354 (1877). *Bentine, supra* at 587, points out that:

> "The office of district attorney is a constitutional office. It is held as a public trust, and the incumbent is charged with grave responsibilities calling for the exercise of learning in the law and sound judgment. . . . Before filing the information it is the duty of the district attorney to make full examination of all the facts and circumstances connected with the case. . . ."

It is beyond doubt that the district attorney, in light of his functions as they involve the criminal law, is an executive branch officer. The role of the district attorney under the state system of government parallels the United States Attorney's role in the representation of the United States. *See, United States v. Nixon*, 418 U.S. 683, 693 (1974); *Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375 (2d Cir. 1973). *United States v. Cox*, 342 F.2d 167, 171 (1965), points out that the attorney for the United States is "an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an

incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions."

We do not conclude that the status and powers of the district attorney under Wisconsin law are completely congruent with those of the United States Attorney, but the district attorney, in his duty to prosecute criminal violations, performs a function of the executive branch.

In the exercise of this executive function to charge a criminal offense, the district attorney has broad discretion. *Harris v. State,* 78 Wis. 2d 357, 368, 254 N.W.2d 291 (1977); *State v. Johnson,* 74 Wis. 2d 169, 173, 246 N.W.2d 503 (1976); *State v. Peterson,* 195 Wis. 351, 359, 218 N.W. 367 (1928). He may select among related crimes and determine which of them will be charged. *Johnson, supra,* He may charge selectively; only if there is a showing of a denial of equal protection in a persistent pattern of charging will the courts intervene. As stated in *Johnson,* supra at 174, "To avoid prosecution for a criminal offense upon equal protection grounds it must be shown that the failure to prosecute was selective, persistent, discriminatory and without justifiable prosecutorial discretion." *See, Yick Wo v. Hopkins,* 118 U.S. 356 (1886).

In *State ex rel. Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 166 N.W.2d 255 (1969), we addressed the general nature of the district attorney's discretion in determining whether to prosecute. *Kurkierewicz* involved the duty of the district attorney to convene a coroner's inquest. Our conclusion in that case was based upon

the nature and function of the district attorney's office in our scheme of government. Accordingly, the principles utilized in determining the district attorney's obligation to call for a coroner's inquest are applicable to the prosecutor's function in this case. We said in *Kurkierewicz*, pp. 378–79:

> "It is clear that in his functions as a prosecutor he has great discretion in determining whether or not to prosecute. There is no obligation or duty upon a district attorney to prosecute all complaints that may be filed with him. While it is his duty to prosecute criminals, it is obvious that a great portion of the power of the state has been placed in his hands for him to use in the furtherance of justice, and this does not per se require prosecution in all cases where there appears to be a violation of the law no matter how trivial. In general, the district attorney is not answerable to any other officer of the state in respect to the manner in which he exercises those powers. True, he is answerable to the people, for if he fails in his trust he can be recalled or defeated at the polls. In the event he willfully fails to perform his duties or is involved in crime, he may be suspended from office by the governor and removed for cause. These, however, are political remedies that go not to directing the performance of specific duties but rather go to the question of fitness for office."

We also quoted with approval, p. 378, n. 2, the language of Justice Charles H. Crownhart of this court which emphasized the discretion of the district attorney in respect to which offenders were to be prosecuted and in naming the offense to be charged. Justice Crownhart stated:

"The public officials having to deal with crime must winnow and sift from the offenders those who are the most guilty—those having the guilty intent—for vigorous prosecution."

Building upon the general principles restated in *Kurkierewicz*, this court in *Thompson v. State*, 61 Wis. 2d 325, 212 N.W.2d 109 (1973), wrote that, even when there is sufficient evidence not only to charge a crime but to convict for the violation, it is not beyond the prosecutorial discretion of a district attorney to divert a possible criminal defendant to noncriminal rehabilitative channels. We stated at page 332:

"For a limited time [the prosecutor] is the trustee of the public's law enforcement conscience. It is his duty to refrain from instituting criminal charges unconscionably or unnecessarily. In the exercise of that public conscience he is neither the puppet of the law enforcement authorities nor of the courts."

*State v. Karpinski*, 92 Wis. 2d 599, 285 N.W.2d 729 (1979), elaborated on these concepts of broad prosecutorial discretion in bringing charges, stating:

"This court has repeatedly emphasized that the prosecutor has great discretion in determining whether to commence a prosecution. ... The prosecutor is not required to prosecute all cases in which it appears that the law has been violated. We have characterized the prosecutor's charging discretion as 'quasi-judicial' in the sense that it is his duty to administer justice rather than to obtain convictions." P. 607.[4]

---

[4]*Karpinski*, while recognizing the extremely broad sweep of prosecutorial discretion, is additionally significant for its recognition of the need for a reasoned and stated approach to a charging if

Thus, in many respects, the district attorney is envisaged as a minister of justice, not as a prosecutor who is obligated to charge every offense and every malefactor to the maximum extent that is possible under the law. In this respect, too, this court's concept of the function of the district attorney is akin to the concept of the United States Supreme Court of the function of the United States Attorney when it said in *Berger v. United States*, 295 U.S. 78, 88 (1935):

> "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."

Wisconsin decisional law has repeatedly held that the discretion to charge or not to charge, and the discretion of how to charge, rests solely with the district attorney. Only where there has been an aura of discrimination has this court indicated that checks were to be placed upon a prosecutor's charging decision.

In *State v. Kenyon*, 85 Wis. 2d 36, 270 N.W.2d 160 (1978), we confronted a different facet of prosecutorial discretion—the discretion of a prosecutor to dismiss a

such decisions are to be consistent with each other and consonant with the standards of equal protection. It invited prosecutors to establish rules for their internal guidance to achieve such consistency, citing the A.B.A. *Standards for Criminal Justice Relating to the Prosecution Function. See, Karpinski*, p. 608. It also again called the attention of prosecutors to the discretion available to them in the diversion of appropriate defendants to a noncriminal disposition.

prosecution once commenced. In approaching this problem, this court recognized that "[t]he discretion resting with the district attorney in determining whether to commence a prosecution is almost limitless. ..." P. 45. It held, however, that a prosecution once commenced could not be dismissed *sua sponte* by the district attorney because it had become subject to court control. A district attorney's dismissal motion would not be granted unless to do so was "in the public interest." P. 45. We need not explore in this opinion the findings required to permit a trial court to dismiss a prosecution once brought. It is sufficient to note that "public interest," as explained in *Kenyon*, encompasses legitimate concerns for the defendant, the concern of the public that prosecutions once brought in respect to "crimes actually committed" (p. 47) be fairly prosecuted, and the concern that rights of third parties be considered.

The right of a court to refuse to accept prosecutorial discretion as the final word where a case has commenced is vastly different from a situation where no crime has been charged. It is obviously factually different. In addition, it is jurisprudentially different. A prosecutor who dismisses an already initiated claim is free to reprosecute it later. To allow on-again, off-again prosecutions that cease before a defendant has been subjected to jeopardy would be to permit the court system to be used for harassment and would expose a defendant to some of the hazards of attachment of jeopardy, *i.e.*, damage to reputation, expense, and threat of criminal sanctions, without the protection that the constitutional prohibition against double jeopardy affords. *See, United States v. Cox*, 342 F.2d 167 (1965). In addition, the "public interest" and that of third parties (*see, Kenyon, supra* at 47) is implicated

by a pending prosecution—a situation not present where a prosecution has not been commenced.

The attorney general, who in this case claims that the discretionary power of prosecutors is properly limited by sec. 968.02(3), Stats., relies on *Kenyon* as authority for the proposition that, because a court may, without violating the separation-of-powers doctrine, refuse to permit a district attorney to discontinue a pending prosecution, it therefore has the power, by using the procedures of sec. 968.02(3), to compel a district attorney to permit a complainant to file a charge which the district attorney has refused to file.

Given the separate functions of the court and the prosecutor, the fact that this case and *Kenyon* involve different stages in the prosecutorial sequence, and given that different values must be protected at each of these stages, we consider the state's conclusion in this respect a non sequitur and its analogy irrelevant.

*Kenyon* stands for a resounding recapitulation of the near-limitless discretion of the prosecutor to charge or not. The only limit that Wisconsin has recognized on a district attorney's initial charging discretion is charging that demonstrably violates the general standards of equal protection.

The attorney general's brief erroneously asserts that *Kenyon* "should not be misconstrued to suggest that a judge in Wisconsin can be authorized to exercise oversight regarding a district attorney's decision to dismiss a prosecution, but not a decision to decline to commence one." However, *Kenyon* does exactly that. While the attorney general asserts that *Kenyon* approves the sharing of the executive power to charge as a means for checking prosecutorial discretion, we see it as nothing of the kind. Rather, *Kenyon* ratifies the court system's power to protect its own

130

integrity from the salvos of repetitious, unwarranted, or frivolous prosecutions that would redound to the detriment of the defendant and the public and impair respect for the judiciary.

Thus, under this court's decisions, the district attorney, as an officer of the executive branch, has the power to make the initial determination of whether or not to charge a criminal offense.

It is asserted, however, that the district attorney's jurisdiction to charge is essentially dependent upon the direction of the legislature. This is certainly correct to the extent that the legislature alone may define and delineate what constitutes a crime. It is the duty of the district attorney to "[p]rosecute all criminal actions." Sec. 59.47(2), Stats. Clearly, "criminal actions" are only those denominated as criminal by the legislature, and their definition undisputably is within the purview of the legislative branch. But the fact that the legislature can define the criminal jurisdiction of the district attorney by no stretch of logic means that it can direct an executive officer to substantially abandon his executive function or direct a judicial officer to act in such a way as to usurp the function of the executive to bring criminal charges.

*Kurkierewicz* recognized that, in minor matters, the district attorney could be subject to the will of the legislature. It expressly stated, however, that, when a legislative direction violates a constitutional requirement, the district attorney's prerogatives as an officer of the executive branch are paramount. The problem raised by this case cannot facilely be resolved by the assertion that the legislative direction is paramount. It clearly is not if that direction results in a substantial encroachment upon the separate powers of the executive branch.

*State v. Coubal*, 248 Wis. 247, 21 N.W.2d 381 (1946), is also relied upon by the state for the proposition that the district attorney is required to prosecute cases as directed by the legislature. Even if *Coubal* were interpreted as the state wishes, the case is not analogous to this one. In the instant case, the district attorney has declined to initiate a charge. In *Coubal*, the district attorney did initiate a charge, but the defendant argued that, because the statute required the district attorney to do so, the charge was void and the court had no jurisdiction to proceed. There is no assertion in *Coubal* that any executive function was usurped by another branch or that there was an encroachment upon powers protected by the separation-of-powers doctrine. Rather, the complaint was that the attorney general could override the district attorney's decision not to prosecute. The attorney general, an officer who is generally conceded to be the chief law enforcement officer of the state, is an officer of the executive branch. In *Coubal*, the question was whether the appropriate executive branch officer was exercising the prosecutorial power. *See,* p. 255. The statute under consideration provided that, unless the district attorney commenced prosecution for certain liquor violations within ten days of a certain report, the attorney general shall direct him to act. While *Coubal* allowed legislative allocation of responsibility between the attorney general and the district attorney, it neither discussed nor decided whether the legislature could deprive the executive branch of its discretion.

The statute in *Coubal* provides that the district attorney shall institute a proceeding; if he does not, he shall give the reasons for his failure to prosecute to the attorney general. This merely provides for review

within the executive branch; one executive officer reviews another's discretion to prosecute. Upon direction of the attorney general, the district attorney must prosecute. If he does not, the attorney general is authorized to commence the proceedings.

*Coubal*, while informative, is not dispositive. It confronts a problem resulting from a defense strategy that was based, not upon a separation of powers between branches, but upon a challenge to the allocation of responsibility within the executive branch. Whether *Coubal* was correct even in that posture we do not decide. *Coubal* is only of peripheral relevance.

Neither *Kurkierewicz* nor *Coubal* support the assertion that the district attorney's discretion to prosecute a crime declared by the legislature is subject to a legislative direction that mandates prosecution when the prosecutorial discretion is to the contrary.

Thus, we write upon a clean slate. This is the first case in this jurisdiction in which it is asserted that a legislative direction which permits the filing of a criminal complaint by someone other than an executive officer is unconstitutional on the basis of the separation-of-powers doctrine, *i.e.*, that the acknowledged discretionary executive power to commence a prosecution is unconstitutionally lodged by legislative fiat in a judicial officer, a non-executive branch officer.

In concluding that the issuance of a judicial complaint, *i.e.*, to "permit the filing of a complaint" by a judge under the proceeding envisaged by sec. 968.02(3), Stats., violates the separation-of-powers doctrine, we do not rely on the policy reasons which have been asserted why initial discretion to prosecute ought be vested solely in the prosecutorial arm of the executive branch. Nor do we examine the reasons

asserted for not vesting complete discretion in the prosecutor. Neither do we conclude that there may not be a judicial review of prosecutorial charging discretion. That question is not presented in this proceeding.

The question before us is whether the statute permits a *de novo* determination by the judge of whether a complaint shall issue (and if so whether the judge acts constitutionally), or whether it requires the judge to examine the prosecutor's prior decision and to review that decision for abuse of discretion.

None of the numerous commentators[5] who have decried the unlimited discretion traditionally placed in the prosecutor in respect to the original charging decision suggest that, upon the refusal of the prosecutor to issue a complaint, it is appropriate for a court to make a *de novo* determination of whether to prosecute.

The attorney general does not suggest that the judge, under sec. 968.02(3), Stats., could properly *ab initio* authorize prosecution. The state in fact acknowledges in its brief that:

> "Well-settled precedent compels the conclusion that any judicial decision to issue a complaint which did not pay appropriate deference to the refusal of the district attorney to initiate a prosecution, and in which the judge acted as a substitute for, rather than a check on, the district attorney, would be a clear abuse of discretion."

---

[5]*See,* K. Davis, *Discretionary Justice: A Preliminary Inquiry* 225–29 (1969); Frase, *The Decision to File Federal Criminal Charges: A Quantitative Study of Prosecutorial Discretion,* 47 U. Chi. L. Rev. 246, 303 (1980); Note, Reviewability of Prosecutorial Discretion: Failure to Prosecute, 75 Colum. L. Rev. 130, 139 (1975).

Although at oral argument, the representative of the attorney general equivocated when asked whether the statute would fail unless we construed it to authorize review of the charging discretion of the district attorney, his entire argument was premised on the assumption that the statute contemplated judicial review.[6]

The attorney general's argument that the statute does not authorize a *de novo* determination is sketchy at best. Essentially, the state argues that public policy supports allowing the judge to review the district attorney's discretion. The judge can make sure that the district attorney has not abused his discretion and "snubbed the public interests."

As stated before, such policy questions as whether the charging discretion should be solely vested in the executive or shared by judicial review of the prosecutor's discretion are irrelevant in the context of this case and in light of the existing statute.

The statute provides, *inter alia*, that "[i]f a district attorney ... is unavailable to issue a complaint, the circuit judge may ...." Thus, the statute on its face permits, indeed authorizes, a judge to make the

---

[6] The court's question at oral argument and the assistant attorney general's response were as follows:

"JUSTICE CALLOW: Mr. Balistreri, unless it is interpreted as you suggest does the statute fail if it is an *ab initio* act by the judge?

"MR. BALISTRERI: I wouldn't go so far as to say the statute has to fail. What I've said in the brief and what I would repeat here is that if the judge does not pay proper deference to the discretion of the district attorney that the judge abuses her discretion then in determining whether to issue a criminal complaint."

charging decision *ab initio* when no prosecutor has acted. This clearly is not an enunciation of a review function. It is an authorization to usurp an essential and important executive function.[7]

In the instant case, the attorney general, in accordance with the language used in his brief, concedes this power—the power to permit the filing of a complaint when the district attorney is unavailable—is not only a *de novo* exercise of executive power by the judiciary, but is also a blatantly unconstitutional exercise of executive power by the judiciary. It is also an unnecessary exercise of power in light of the authority of the circuit judge, under sec. 59.44, Stats., to appoint an acting district attorney.

Is this clearly unconstitutional portion of the statute severable from the balance? We conclude not, for the entire statute contemplates a *de novo* determination by the judge. The statute does not authorize or permit a review function.

The statutory mindset that allows the judge to substitute for an "unavailable" district attorney permeates the entire statute. It is clear from the plain language of the statute that the judge, in case of unavailability, performs the exact function of the prosecutor, *i.e.*, he makes the determination whether to let the complaint be filed. There is nothing in the

---

[7]This provision is as bizarre as it is inexplicable, for sec. 59.44, Stats., permits a judge to appoint an acting district attorney for any number of reasons which clearly encompass the problem of unavailability. It would appear that, if a district attorney is "unavailable," a reasonable judge, acting constitutionally, would not arrogate the executive powers to himself, even under the aegis of sec. 968.02(3), but would appoint a suitable lawyer to act to process any complaint. "[T]he person so appointed shall have all the powers of the district attorney while so acting." Sec. 59.44(1).

statute to indicate that any different procedure is to be used when the district attorney has refused to issue the complaint. In each case, the only guidance furnished by the statute is that the "judge may permit the filing of a complaint, if the judge finds there is probable cause to believe that the person to be charged has committed an offense."

The finding of probable cause by the judge is the only prerequisite for the judge to act instead of an unavailable district attorney or to supersede the decision of the refusing district attorney. Not a word in the statute leads to the conclusion that the judge's function is to review the exercise of discretion of the prosecuting attorney. Ordinarily, the exercise of discretion contemplates that a decision will be made on the basis of the applicable law and in consideration of all the pertinent facts. But, as the guidelines for charging set forth in *Karpinski* point out, the appropriate and accepted guidelines or discretionary factors to be considered in the charging decision are within the peculiar knowledge of the prosecutor, not of the judge. The statute does not suggest that the action of a prosecutor should be ratified if a reasonable person acting as the prosecutor could have reached the decision not to charge. Instead, a judge may allow the filing of the complaint upon the judge's finding of probable cause, a finding that may be based upon new facts never presented to the prosecutor. It is obvious that whatever the sec. 968.02(3) hearing purports to be, it is not a review procedure. There is no requirement that the district attorney make a record of the basis for his determination, although the Milwaukee district attorney in this case did set forth in a press release his reasons for not prosecuting. Even with such a record volunteered, in this case the judge would

need pay no attention to the discretionary factors. The judge's *de novo* finding of probable cause would be sufficient to vitiate the carefully reasoned discretion of the prosecutor.

The statute makes no provision for the district attorney to defend his decision for declining prosecution or to give any reason for his action. The mere fact that the statute provides that the district attorney "may attend" the hearing in no way suggests an obligation or the right of the district attorney to defend his action or that the judge is to review the discretionary factors that impelled the district attorney's prior action. The statute only speaks *in praesente:* Does the sec. 968.02(3) hearing conducted by the judge produce facts from which probable cause can be found by the particular judge? If so, a complaint may issue.

The assistant attorney general repeatedly asserted in oral argument that the right to attend was "obviously" for the purpose of explaining his exercise of discretion—that it was not for the purpose of "sleeping" during the course of the sec. 968.02(3) hearing. It is just as reasonable, however, to conclude that the district attorney should be there because, if the judge finds probable cause, it will be the district attorney's case to prosecute. Moreover, we pointed out in *Newspapers, supra,* that the sec. 968.02(3) hearing was presumptively to be open to the public and could be closed only in compelling circumstances. Under sec. 968.02(3), however, the hearing could not be closed to the district attorney. The statute points out an exception to closure under circumstances that might otherwise warrant confidentiality. We find no implication in the statute that the purpose of the district attor-

ney's presence is to submit his exercise of discretion to the reviewing scrutiny of the judge.

Sec. 968.02(3), Stats., on its face permits the judge to act to issue a complaint when the district attorney was not available to act (although the judge has plenary power to appoint, under sec. 59.44, an acting district attorney to consider the issuance of a complaint). Thus, it allows complete and direct substitution of a judge's decision for the action of a duly appointed or elected prosecutor.

A similar, and even a more egregious, affront to the principles of the separation of powers occurs when the judge can override and set at naught the district attorney's discretionary declination to prosecute. The judge need have no better reason for his action than the fact that he has found probable cause that the offender has committed a crime.

This is a substantial encroachment upon the discretionary executive power to prosecute or not. It constitutes the usurpation of discretionary executive power and places in its stead a judicial decision based not upon discretionary factors but upon a legal standard of probable cause.

A judge acting under the procedure set forth in sec. 968.02(3), Stats., simply becomes the prosecutor and not only substantially encroaches on the executive function, but at this stage of the proceeding entirely ousts the executive officer from his constitutional duties.

Under our republican form of government—defined as a government of separation of powers (sec. 15.001, Stats.), the function imposed upon the judiciary by the statute is one that it is without power to perform. Accordingly, the hearing scheduled could only result in a complaint issued by a judicial officer

who is not authorized to do so. The proceeding would be void. Accordingly, we grant the petition of the relators and direct that the circuit court for Milwaukee county be prohibited from conducting further proceedings in the matter captioned *In re Petition of K.M.*, Criminal Division Case L 002-C.

It should be noted that, because we find that sec. 968.02(3), Stats., does not contemplate or countenance a review of the prosecutor's charging discretion, we do not consider the constitutionality of a statute that might provide for such a review. Nor do we in this opinion have occasion to take a position on the desirability of prosecutors establishing internal guidelines for the exercise of prosecutorial discretion. We reiterate, however, the reference to the A.B.A. *Standards for Criminal Justice Relating to the Prosecution Function*, Standard 3.9, that appears in *Karpinski v. State, supra*, 92 Wis. 2d at 608, and the articles cited in *Karpinski* as explanatory of the methods and the need for "encouraging prosecutorial discretion to achieve flexibility and sensitivity and the need for circumscribing prosecutorial discretion to avoid arbitrary, discriminatory or oppressive results." *Karpinski*, p. 608.

The charging discretion of a prosecutor is, however, not without limits. It is tested—although only as to the sufficiency of the evidence, by a judge upon the holding of a preliminary examination—by the requirement that the judge find probable cause before binding a defendant over for trial. *See*, sec. 970.03(7)–(10), Stats. Absent evidence of probable cause to believe that a crime was committed by the defendant, the judge must order the defendant discharged. Sec. 970.03(9). The prosecutor in Wisconsin, by the necessity for election, is answerable to the people at least

every two years. Wis. Const. Art. VI, sec. 4(4); sec. 17.09(3). Moreover, he is subject to recall. Wis. Const. Art. XIII, sec. 12. As an elected official who must eventually prove his good faith in the public forum, he is subject to the constant scrutiny of the press. Additionally, the charging direction is subject to the strictures of equal protection to avoid discriminatory charging or discriminatory leniency. Also a prosecutor abuses his discretion when he charges for coercive reasons or overcharges to induce plea bargains. Such conduct is subject to the scrutiny of the bar generally and the courts specifically. The Standards for Professional Responsibility can be invoked in the event of prosecutorial misconduct. Prosecutors are held to the standards of conduct and fair play expected of all lawyers.[8]

None of these efficacious checks upon the prosecutor's discretion amount to a direct substitution of the views of the district attorney. None of them infringe upon the flexible doctrine of separation of powers.[9]

---

[8]*See,* for example, *State v. Ruiz and State v. Servantez,* 118 Wis. 2d 177, 203 n. 5, 347 N.W.2d 352 (1984); *Disciplinary Proceedings Against Zapf,* 126 Wis. 2d 123, 375 N.W.2d 654 (1985).

[9]As have been repeatedly stated, a blending of powers or a sharing of powers, such as occurs in a John Doe proceedings, is acceptable. *See, State v. Washington,* 83 Wis. 2d 808, 825–27, 266 N.W.2d 597 (1978). Here, as stated above, the powers are not shared. Under sec. 968.02(3), Stats., executive power is voided and, at the siren call of the legislature, judicial power supersedes the executive discretion.

We have not given any extended thought to the question of the impingement upon the judicial function if we are required by disgruntled complainants and sec. 968.02(3) to hold hearings for the purpose of making *ab initio* decisions reserved to the executive branch. It should be noted, however, that this court has held unconstitutional a delegation to the courts of the determination of

Because we find the meaning of sec. 968.02(3), Stats., clear upon its face, we do not herein explore the legislative history of that statute. *State v. Denter*, 121 Wis. 2d 118, 123, 357 N.W.2d 555 (1984), *Aparacor, Inc. v. I.L.H.R. Dept.*, 97 Wis. 2d 399, 403, 293 N.W.2d 545 (1980). The attorney general would interpret the statutory language, "the judge may permit the filing of a complaint," to mean, or at least to imply, that there shall be a review of the prosecutor's discretion. The very best that can be said for the attorney general's argument is that, under that language, although the judge should conclude there is probable cause, the judge has discretion not to issue the complaint. This is undoubtedly true, but irrelevant. The question is not whether the judge exercises discretion in issuing a complaint. The question as posed by the attorney general is whether prosecutorial discretion is being reviewed. Whether the judge may exercise his discretion has nothing to do with what the attorney general considers important—the review of the prosecutor's discretionary decision. Whether the phrase, "the judge may permit the filing of a complaint," means that a finding of probable cause by the judge permits him to file a complaint or obligates him to do so, both meanings imply an *ab initio* decision, and it is therein that the vice of the statute lies. Because the statute in any way material to this controversy is unambiguous, we do no more than to read the statute and examine its apparent and clear

policy matters that, under the separation-of-powers doctrine, ought to be reserved for the legislature. *See, In re City of Fond du Lac*, 42 Wis. 2d 323, 166 N.W.2d 225 (1969). *See*, also, *Illinois v. Joseph*, 113 Ill. 2d 36, 495 N.E.2d 501 (1986).

import. We have no need to explore its legislative history.

Because the statute, without question, authorizes the complete usurpation or substitution of an important executive function by the judiciary, the statute is unconstitutional beyond a reasonable doubt. We grant the writ of prohibition and direct that the circuit court for Milwaukee county be prohibited from conducting further proceedings in the matter.

*By the Court.*—Writ granted.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). The district attorney functions at the juncture of the three branches of government. Listed in the administrative article of the Wisconsin Constitution, the district attorney exercises quasi-executive, quasi-legislative and quasi-judicial powers through enforcement policies.[1] In practice the district attorney's ability to

---

[1] The majority relies on the state's concession that the district attorney is an officer of the executive branch of government and also concludes that the district attorney is "an executive branch officer," majority opinion at pages 123, 124, and "performs a function of the executive branch." Majority opinion at page 125. The district attorney, as well as the attorney general, is mentioned in the article entitled Administrative (article VI) of the Wisconsin constitution. Only the Governor is included within the Executive article (article V). Professor Christenson concludes that the attorney general occupies a unique position: he or she is not a part of either the executive or the legislative branch. Christenson, *The State Attorney General,* 1970 Wis. L. Rev. 298, 300. For further discussions of the Attorney General's office, see Christenson, *A Look at the History of the Office of Attorney General in Wisconsin,* 1970 Wis. L. Rev. 1043; Van Alstyne & Roberts, *The Powers of the Attorney General in Wisconsin,* 1974 Wis. L. Rev. 721.

decline to prosecute is a significant power, resembling at times the legislature's power to repeal statutes, the judiciary's power to acquit and the governor's power to pardon.[2] The majority's assertions to the contrary

I shall not pursue the issue of whether the district attorney is an executive branch officer or performs executive branch functions or the significance of such determinations. Nor do I compare the offices of district attorney and United States attorney. These issues are not relevant to my concurrence.

[2]For discussions of prosecutorial discretion, see, *e.g.*, Davis, *Discretionary Justice* (1969); Goldstein, *The Passive Judiciary: Prosecutorial Discretion and the Guilty Plea* (1981); Miller, *Prosecution: The Decision to Charge a Suspect with a Crime* (1969); National College of District Attorneys, *Discretionary Authority of the Prosecutor* (J.J. Douglass ed., 1977); Abrams, *Prosecutorial Discretion*, 3 Ency. of Crime and Justice 1271 (S.H. Kadish ed. 1983); Baker, *The Prosecutor—Initiation of Prosecution*, 23 J. Crim. L. & Criminology 770 (1932–33); Bubany & Skillern, *Taming the Dragon: An Administrative Law for Prosecutorial Decision Making*, 13 Am. Crim. L. Rev. 473, 480–81 (1976); Cox, *Prosecutorial Discretion: An Overview*, 13 Am. Crim. L. Rev. 383 (1976); Ferguson, *Formulation of Enforcement Policy: An Anatomy of the Prosecutor's Discretion Prior to Accusation*, 11 Rutg. L. Rev. 507 (1957); LaFave, *The Prosecutor's Discretion in the United States*, 18 Am. J. Comp. L. 532 (1970); Sunstein, *Reviewing Agency Inaction after Heckler v. Chaney*, 52 U. Chi. L. Rev. 653 (1985); Vorenberg, *Decent Restraint of Prosecutorial Power*, 94 Harv. L. Rev. 1521 (1981); Note, *Private Prosecution: A Remedy for District Attorneys' Unwarranted Inaction*, 65 Yale L.J. 209 (1955); Note, *The Use of Mandamus to Control Prosecutorial Discretion*, 13 Am. Crim. L. Rev. 563, 563 (1976); Note, *Judicial Review of Administrative Inaction*, 83 Colum. L. Rev. 627 (1983); Note, *Reviewability of Prosecutorial Discretion: Failure to Prosecute*, 75 Colum. L. Rev. 130, 150 (1975); Note, *Prosecutor's Discretion*, 103 U. Pa. L. Rev. 1057 (1955); Note, *Prosecutorial Discretion in the Initiation of Criminal Complaints*, 42 S. Cal. L. Rev. 519 (1969).

For discussions of the Wisconsin district attorney see, *e.g.*, Brown, *The Wisconsin District Attorney and the Criminal Case* (2d

notwithstanding, majority opinion at pages 129, 130, the public has a legitimate and substantial interest in the prosecutor's decision not to charge, implicating as it often does such broad concerns of an executive, legislative and judicial nature.

I agree with the majority that sec. 968.02 (3) enables the circuit court to decide de novo whether a complaint should be filed and is invalid as a delegation of unlimited "executive" discretionary power to the judiciary. I do not join the majority opinion because I do not agree with the majority's sweeping generalizations about the powers of the district attorney and the legislature. The majority opinion ignores the history of the Wisconsin district attorney's powers to file complaints and is based on a strained reading of the Wisconsin cases.

Sec. 968.02, the statute at issue in this case, evinces a legislative intent to give weight to the views of both the prosecutor and the victim in the charging decision. The legislature's concern with the roles of both the prosecutor and the victim in the charging decision accords with the history of the role of the district attorney in Wisconsin, a history important to

---

ed. 1977); Miller, *Prosecution: The Decision to Charge a Suspect with a Crime* ch. 20 (1969); Wis. Leg. Council Res. Bull. 82–5, *The Office of Wisconsin District Attorney and Comparison of State Prosecutorial Systems* (1982); Note, *Statutory Discretion of the District Attorney in Wisconsin,* 1953 Wis. L. Rev. 170.

Apparently, district attorneys in several Wisconsin counties have themselves promulgated written guidelines and procedures relating to charging decisions. A legislative council study in 1982 states that such standards exist in seven counties, including Milwaukee. Wis. Leg. Council, Staff Bull. 83–1, *Profile of District Attorney Offices in Wisconsin: A Summary of Responses to 1982 Questionnaire,* Table 14, p. 18.

an understanding of the constitutional issues of delegation and separation of powers.

Twentieth century lawyers are accustomed to public prosecution, but historically the victim, not the state, was the prosecutor. In Colonial and post-Colonial America, the state began to take over the prosecutorial function.[3] Apparently over the years the Wisconsin legislature has increased the power of the district attorney to initiate criminal proceedings. See Justice Steinmetz's dissenting opinion passim. Indeed, according to the legislative history of sec. 968.02, this 1969 statute embodies the legislature's intent to increase the district attorney's role in the decision to initiate prosecution.[4] Apparently the 1969 legislature recognized that sound prosecutorial judgment in the charging decision could improve the administration of justice. By placing the prosecutorial power in the hands of a public official responsible as much to the public in general as to the individual victim, the legislature hoped to promote the impartial adminis-

---

[3]On private prosecution and a history of the prosecutor's office, see, *e.g.*, Goldstein, *Prosecution: History of the Public Prosecutor*, in 3 Ency. of Crime and Justice 1286 (S.H. Kadish ed. 1983); Cardenas, *The Crime Victim in the Prosecutorial Process*, 9 Harv. J. Law and Pub. Pol. 357 (1986); Van Alstyne, *The District Attorney—A Historical Puzzle*, 1952 Wis. L. Rev. 125; Note, *Private Prosecution: A Remedy for District Attorneys' Unwarranted Inaction*, 65 Yale L.J. 209 (1955).

[4]The Commentary to sec. 968.02 states:

"This is a change from the present law designed to give the district attorney a greater voice in the initiating of criminal proceedings. Since his is the obligation of conducting the prosecution it is believed that he should have a voice in the screening out of unfounded complaints and in determining if there was sufficient evidence to warrant prosecution." See Comments—L.1969, c. 255, Note to sec. 968.02, West's Wis. Stats. Annot.

tration of justice free of the overreaching and over-zealousness that might result if prosecution were left solely to the aggrieved private individuals. The discretion whether to charge may enable the prosecutor to mitigate the harshness of the criminal law, individualize justice, deploy scarce resources in a pattern best suited to combatting the greatest threats to the community, resort to alternative dispositions that may better serve the victim and the suspect, protect the victim from the ordeal of a trial if the victim desires such protection, and procure the potential defendant's help in the prosecution of a more serious offender.

Nevertheless, the 1969 legislature also recognized the legitimate interest the victim and the public have in prosecution. Along with increasing the district attorney's powers, the 1969 legislature adopted sec. 968.02 (3), which was based on sec. 6.02 of the ALI Model Code of Pre-Arraignments Procedure (Tent. Draft #1, 1966), to provide a check on the prosecutor's decision not to issue complaints.[5] The legislature's

[5]The Commentary to sec. 968.02(3) states:

"Sub. (3) provides a check upon the district attorney who fails to authorize the issuance of a complaint, when one should have been issued, by providing for a judge to authorize its issuance.
"Sub. (3) also provides a vehicle for the issuance of complaints when the district attorney is unavailable." Comments—L. 1969, c. 255, Note to sec. 968.02, West's Wis. Stats. Annot.

Sec. 6.02 of the Model Code gave the state law enforcement officer independent power to issue complaints and gave the judge the power to permit the filing of a complaint after giving the district attorney a hearing.

While the American Bar Association discourages private prosecution, it acknowledges that the victim has a legitimate claim to be heard. The ABA states that its encouragement of

concern for the victim and the public and its concern for checking prosecutorial discretion are demonstrated in numerous other statutes that allow prosecution by persons other than the district attorney.[6]

public prosecution was "not intended to discourage the adoption of a system under which a complainant may move for prosecution before a magistrate when a prosecutor has declined to prosecute." A.B.A. Standards for Criminal Justice, The Prosecution Function, Commentary to Standard 3-2.1 (2d ed. 1980).

For the victim and the criminal justice system, see, *e.g.*, chs. 949 and 950, Stats. 1985–86; Goldstein, *Defining the Role of the Victim in Criminal Prosecution*, 52 Miss. L.J. 515 (1982); McDonald, *Towards a Bicentennial Revolution in Criminal Justice: The Return of the Victim*, 13 Am. Crim. L. Rev. 649 (1976); Symposium, Victims' Rights, 11 Pepperdine L. Rev. 1 (1984).

[6]The Wisconsin legislature has expressed its concern, in numerous statutes, that a government official other than the district attorney be available to initiate a proceeding if the district attorney refuses or fails to act or is unavailable to act. The legislature has established several models for review of a district attorney's decision not to prosecute.

Sec. 23.65 (3), Stats. 1985–86, patterned after sec. 968.02, permits a circuit court to file a complaint if the district attorney refuses or is unavailable to issue a complaint and there is probable cause to believe that the person charged has committed a violation of chs. 23 (conservation), 26 (forest lands), 27 (parks), 28 (public forests), 29 (fish and game), 30 (navigable waters, harbors and navigation), 31 (dams and bridges) and 350 (snowmobiles). This decision apparently casts doubt on the constitutionality of sec. 23.65 (3).

Sec. 59.44, Stats. 1985–86, allows the circuit court to appoint a special prosecutor to initiate a complaint under specified circumstances not involved in this case.

Sec. 979.04 (2), Stats 1985–86, takes another approach. It provides that if the district attorney refuses to order an inquest, the circuit court, upon petition of a coroner or medical examiner, may issue the order if it finds that the district attorney has abused his or her discretion in not ordering an inquest.

I agree with the majority that in sec. 968.02 (3) the legislature has failed to keep within constitutional bounds in attempting to reconcile its concern for giving the victim and the public a voice in initiating prosecution with its concern for entrusting initiation of prosecution to the district attorney. The majority opinion could be read to say that sec. 968.02(3) fails because it divests the district attorney of some kind of inherent executive powers. I disagree with such a reading. This court has stated that "the position of district attorney, though constitutional, was not one of inherent powers, but was answerable to specific directions of the legislature." *State ex. rel Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 380, 166 N.W.2d 255 (1969). This court has also stated that although the district attorney has the duty to administer jusitce rather than to obtain convictions and has many opportunities under the statutes to exercise discretion, "there is no basis for holding that his duties in representing the state are not subordinate to legislative discretion as to the cases in which he shall proceed." *State v. Coubal,* 248 Wis. 247, 257, 21 N.W.2d 381 (1946). The majority would be going too far were it intimating that the legislature's power

Taking still a different tack, several statutes provide that if the district attorney does not act, the Department of Justice may. See, *e.g.*, secs. 5.08, 11.61(2), 19.51(1)(a), 767.65 (12), (18) (c), (38) (b), Stats. 1985–86.

Some statutes authorize citizens to bring actions themselves. The open meeting statute provides that if the district attorney refuses or otherwise fails to commence an action to enforce the open meeting law within 20 days after receiving a verified complaint, the person making the complaint may bring an action on his or her relation in the name and on behalf of the state and may receive reasonable attorney fees if he or she prevails. Sec. 19.97 (4), Stats. 1985–86.

149

over the district attorney's enforcement powers may be exercised only through the legislature's definition of crimes or in other "minor matters." Majority opinion at 131.

In my opinion the majority's description of *Coubal* slides over the significance of the holding of the case. The *Coubal* court held that the legislature could authorize the attorney general, an officer over whose powers, duties and compensation the legislature has express constitutional authority, art. VI, sec. 3, to require the district attorney to proceed in certain cases despite the district attorney's desire not to proceed. If the legislature may subject the district attorney to the orders of the attorney general, the legislature should be able to prescribe the duties of the district attorney in ways other than by defining crimes. Majority opinion at pages 131–134.[7]

While our cases have recognized both the legislature's power to direct the district attorney and the district attorney's broad discretion under the existing

---

[7] At slip opinion at page 132, the majority asserts, "There is no assertion in *Coubal* that any executive function was usurped by another branch or that there was an encroachment upon powers protected by the separation-of-powers doctrine." The majority ignores the fact that the trial court in *Coubal* "held that the district attorney possesses inherent, quasi-judicial power which precludes the legislature from requiring that he proceed in a particular case contrary to what he might think best." *Coubal*, 248 Wis. at 256–57. The *Coubal* court emphatically rejected any such notion either of the breadth of the district attorney's powers or of the limits on the legislature's powers, saying, "We think it would come as a great surprise to the legal profession of the state were the court to hold ... that the district attorney possesses inherent constitutional quasi judicial powers which preclude the legislature from requiring that he proceed in a particular case contrary to what he might think best." *Id.* at 259.

statutes in prosecuting offenders, our cases have not dealt directly with the difficult question of the constraints that the separation of powers doctrine may impose on the legislature's powers to direct the district attorney in enforcing the law. Such constraints, if any, have not yet been tested, nor are they tested in this case. This decision holds merely that the separation of powers doctrine bars the legislature from delegating to the judiciary virtually unlimited "executive" discretionary power to initiate criminal proceedings.

In effect this decision remands to the legislature, sec. 13.93(2)(d), Stats. 1985–86, the decision whether to provide a forum, and if so what kind of forum, in which the prosecutor's decision not to charge a person suspected of having committed a crime may be challenged and overturned.[8]

For the reasons set forth, I concur.

STEINMETZ, J. *(dissenting)*. I do not question the integrity, ability, intelligence or professional judgment of District Attorney E. Michael McCann or the Milwaukee county district attorneys office. However, the fine qualities of a specific district attorney or his office do not justify nullifying a law as being unconstitutional that would allow an independent review of the decisions of such an office. Since Judge Arlene Connors has not yet made a finding, no one could

---

[8]In *Dept. of Revenue v. Gordon*, 127 Wis. 2d 71, 377 N.W.2d 212 (Ct. App. 1985), the court of appeals held that a judge's refusal to allow issuance of complaint under sec. 968.02(3), Stats., was an unreviewable decision and called this to the attention of the legislature as a deficiency in the statute.

know at this stage of the proceedings if Judge Connors would make a finding of probable cause and order the issuance of a complaint and that is irrelevant to the issue of constitutionality.

After his investigation, District Attorney McCann issued a statement that probable cause existed but that there was not enough evidence to prove beyond a reasonable doubt that the individuals involved committed a crime. District Attorney McCann, therefore, declined to prosecute the individuals. Whatever his reasons for declining, I acknowledge that these actions were well within his prosecutorial discretion.

However, District Attorney McCann's actions, the sufficiency of the evidence, or how Judge Connors is likely to rule are not issues in this case. The sole issue is simply whether sec. 968.02(3), Stats., is constitutional.

The majority believes that sec. 968.02(3), Stats., is a usurpation of discretionary executive power because it replaces it with a judicial decision not based on discretionary factors used by prosecutorial personnel but on a legal standard of probable cause. Majority opinion at page 139. I disagree. Section 968.02(3) states the judge "may" permit the filing of a complaint but does not require a filing on a finding of probable cause.

The majority decision states that sec. 968.02(3), Stats., is unconstitutional beyond a reasonable doubt. I am not convinced by the majority's arguments that this arduous burden has been met. Will the district attorney now only be reviewed by a judge and jury when he does bring charges, but there will be no review when charges are not brought? The "review" cited by the majority in a preliminary examination would occur after the prosecutor filed a charge; this would involve no check on prosecutorial discretion to

not charge. The other "checks" the majority notes (including two-year terms, summary removal by the governor, recall, press scrutiny, and the Standards of Professional Responsibility Codes) have nothing to do with the district attorney's decision to charge or not to charge a particular person with a particular crime. All would tend to be invoked if there were a pattern of conduct that was questionable but unlikely to be invoked in a specific instance. These methods would not be "efficacious checks upon the prosecutor's discretion" (majority opinion at page 140) as they are ineffective in bringing about the intended result: limiting the prosecutor's discretion. At best, these are not limitations in particular cases but apply generally to the conduct or decisions of a district attorney.

The "checks" are little or no solace to the victim of criminal actions who desires vindication, protection, punishment, or retribution. For the victim only the opportunity to be heard by a judge or jury who make a judgment of guilty or not guilty will allow what little solace the legal process provides. Although the law encourages victims to come forward and report such acts as sexual assault, if this statute is struck down, victims will know that the chance they take in coming forward to report the crime could be a pointless risk, solely due to the discretion of a single person, the district attorney. Allowing a review of such a decision, even if the decision is affirmed, by a member of the judiciary promotes trust in the legal system.

Is there a district attorney who would claim he never issues charges on the basis of probable cause rather than proof beyond a reasonable doubt? Would any district attorney deny ever taking the attitude that judges or juries should decide guilt? Sexual

assault cases involve either the identification of the assailant or the consent of the victim. Both situations revolve around the credibility of the victim and the accused. "Credibility" is a quantity that a prosecutor would be hard pressed to say would always convince a jury "beyond a reasonable doubt" that a crime had been committed.[1] Yet sexual assaults are continually being charged. Either the necessity that a prosecutor believes he can prove a crime was committed "beyond a reasonable doubt" before charging is a convenient selective legal fiction or prosecutors are charging in violation of these lofty standards. That policy can apply justice unevenly and discriminatorily, since the district attorney takes the role of prosecutor and jury.

The majority finds fault with the part of sec. 968.02(3), Stats., that permits the judge to act to issue

---

[1]District Attorney McCann's reasons for declining to file charges were set forth in *State ex rel. Newspapers v. Circuit Court*, 124 Wis. 2d 499, 502, 370 N.W.2d 209 (1985). In part, he stated:

> "'To file charges of third-degree sexual assault when we believe that *a jury* will find the men not guilty would not be in the interests of justice. . . . [O]n the evidence that would be presented to the jury, we will not be able to convince a jury beyond a reasonable doubt that consent was not given.'" (Emphasis added.)

A careful reading of the A.B.A. *Standards for Criminal Justice Relating to the Prosecution Function*, Standard 3-3.9, which the majority endorses (majority opinion at page 140), provides that the prosecutor should not file charges "in the absence of sufficient admissible evidence to support a conviction," or when the prosecutor has a reasonable doubt that the accused is guilty. From the reasons District Attorney McCann gave for not prosecuting, it appears he did not apply these standards. District Attorney McCann would only prosecute if he was sure the jury would return a guilty verdict, but the standards urge prosecution when, assuming a guilty verdict, the evidence will support the verdict.

a complaint when the district attorney is not available. It finds that the judge has plenary power under sec. 59.44 to appoint an acting district attorney to consider the issuance of a complaint. However, sec. 59.44 has its basis for authority when there is no district attorney for the county, or the district attorney is absent from the county, or has a relationship to the accused, or is serving in the armed forces of the United States, or if the district attorney himself is charged. The court finds the problem with sec. 968.02(3) to be a direct substitution of a judge's decision for the action of a duly appointed or elected prosecutor. However, the court ignores the fact that some district attorneys in this state are not full-time officeholders and their salaries are commensurate to such offices. Section 59.48 states: "It is unlawful for any district attorney of any county having a population of 40,000 or more to hold the office of or act as city attorney of any city in the county of which he is district attorney. ..." No other practice is prohibited. That is the real world in Wisconsin outside of heavily populated counties where it is recognized district attorneys may not be full-time officeholders. *E.g.,* *State v. Hanson,* 136 Wis. 2d 195, 401 N.W.2d 771 (1987), filed this same date.

Section 968.02(3), Stats., is a proper, realistic enactment to help move criminal cases through the court system without it being a challenge or usurpation of district attorneys' prosecutorial discretion. Under sec. 968.02(3), a judge can act directly to review a complaint. Without this authority, in the absence of the district attorney, the policy might be required to hold a suspect until the elected or appointed district attorney becomes available or the process of appointment of a substitute is accomplished. If that were to

happen, the claim would be that a complaint was not issued in a reasonable period of time.

This court found "a blending of powers or a sharing of powers, such as occurs in a John Doe proceeding, is acceptable. *See State v. Washington*, 83 Wis. 2d 808, 825–27, 266 N.W.2d 597 (1978)." Opinion at page 141, n. 9. In fact, the court stated in *Washington*, 83 Wis. 2d 828:

> "To the extent that the statute may be viewed *as granting both judicial and quasi-executive powers to the John Doe judge*, we believe that witnesses and persons accused can be protected by appellate court review of John Doe proceedings and of the court orders which are an outgrowth of those proceedings." (Emphasis added.)

Regarding the principle of separation of powers, the *Washington* court added:

> "The doctrine of separation of powers must be viewed as a general principle to be applied to maintain the balance between the three branches of government, to preserve their respective independence and integrity, *and to prevent concentration of unchecked power in the hands of any one branch." Id.* at 825–26. (Emphasis added.)

In attempting to distinguish John Doe proceedings from sec. 968.02(3), Stats., the majority goes on to say: "Here, as stated above, the powers are not shared. Under sec. 968.02(3), executive power is voided and, at the siren call of the legislature, judicial power supersedes the executive discretion." Slip opinion at page 26, n. 9. This ignores the facts underlying *State ex rel. Jackson v. Coffey*, 18 Wis. 2d 529, 118 N.W.2d 939 (1963). In *Coffey*, the court upheld the Justice Department's assistance of then circuit court Judge John

156

Coffey in conducting a John Doe proceeding. The John Doe proceeding was investigating the conduct and interaction of the Milwaukee Police Department and the Milwaukee County District Attorneys office. The facts of *Coffey* show that the John Doe statute had an equal probability of "usurping" the district attorney's executive power of prosecutorial discretion.

The John Doe statute, sec. 968.26, Stats., states in part: "The extent to which the judge may proceed in such examination is within his discretion." That language does not foreclose an examination before the tribunal of the district attorney himself, possibly against his will. What greater intrusion into the district attorney's executive discretion could there be than an involuntary examination of the district attorney? However, this court interpreted and applied sec. 968.26. It is inconceivable that the majority would interpret sec. 968.02(3) to be unconstitutional as a usurpation of prosecutorial authority. The treatment of the two statutes is inconsistent and demonstrates that sec. 968.02(3) is not unconstitutional beyond a reasonable doubt. The majority has not followed its own standard so often repeated by this court: a statute should be saved if at all possible and the court should seek out and apply reasoning to preserve an act of the legislature.

The majority relies partly on sec. 15.001, Stats., for its separation of powers authority; however, that section states: "It is a traditional concept of American government that the 3 branches are to function separately, without intermingling of authority, except as specifically provided by law." This is not a constitutional basis for the majority's opinion and provides within the section that the legislature may provide by

157

law for the intermingling of authority within the three branches.

As we stated in *Quinn v. Town of Dodgeville*, 122 Wis. 2d 570, 577, 364 N.W.2d 149 (1985):

> "It is well settled that the law in this state presumes all legislative acts are constitutional, and the petitioner in order to prevail must prove the opposite by a standard beyond a reasonable doubt. *State ex rel. McCormack v. Foley*, 18 Wis. 2d 174, 279, 118 N.W.2d 211 (1962). It is insufficient to merely establish doubt as to an act's constitutionality nor is it sufficient to establish the act is probably unconstitutional. This court indulges every presumption and will sustain the law if at all possible. If any doubt exists as to a law's unconstitutionality, it will be resolved in favor of its validity. *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973); and, 'If there is any reasonable basis for the exercise of the legislative power, we are obliged to uphold the enactment.' *Watchmaking Examining Bd. v. Husar*, 49 Wis. 2d 526, 531, 182 N.W.2d 257 (1971). *We are not concerned with the merits of the legislation under attack nor we are concerned with the wisdom of what the legislature has done. Gottlieb v. Milwaukee*, 33 Wis. 2d 408, 415, 147 N.W.2d 633 (1967), *see also Chicago & N.W.R. Co. v. La Follette*, 27 Wis. 2d 505, 521, 135 N.W.2d 269 (1965)." (Emphasis added.)

Instead, the majority has looked only for ways of upsetting the statute rather than saving it. At best, the evidence relied upon by the majority is barely on the palpable side of evanescence.

In *State ex rel. Deisinger v. Treffert*, 85 Wis. 2d 257, 267–68, 270 N.W.2d 402 (1978) this court de-

scribed our obligation to uphold the constitutionality of a statute as follows:

> "However, we do not find sec. 971.14(5) unconstitutional. This court is obligated to uphold the constitutionality of a statute whenever possible and in the past has supplied statutory deficiencies by court rule in order to save a statute. *State ex rel. Chobot v. Circuit Court for Milwaukee County*, 61 Wis. 2d 354, 367, 212 N.W.2d 690 (1973). *Huebner v. State*, 33 Wis. 2d 505, 147 N.W.2d 646 (1967)." (Footnotes omitted.)

Not only does the majority search for reasons to find the challenged sections of the statute unconstitutional, it refuses to sever the balance. The majority opinion states: "Is this clearly unconstitutional portion of the statute severable from the balance? We conclude not, for the entire statute contemplates a *de novo* determination by the judge. The statute does not authorize or permit a review function." Majority opinion at page 136. I disagree that the statute contemplates only *de novo* determination, and therefore, the statute should be severed.

If the judge follows the statutory procedure in the absence of the district attorney, it is *de novo* action. However, if the district attorney refuses to issue a complaint, then the judge's consideration of the circumstances is a review of the district attorney's determination. The review is whether a complaint should have been issued and whether the district attorney was correct. It does not matter whether the judge considers the identical or additional evidence or whether the judge places a different weight on the same evidence. The additional evidence would obviously have been available to the district attorney.

159

Such a decision is not *de novo*.[2] It is a review of the same issue: should a complaint be issued?

Although the majority denies the statute contemplates "review of the prosecutor's discretion" and asserts the court will not rule on that issue, it states at 139 of the slip opinion: "A similar, and even a more egregious, affront to the principles of the separation of powers occurs when the judge can override and set at naught the district attorney's discretionary declination to prosecute." In spite of the disclaimer, the court with this statement certainly rules on review authority which the majority does not even find present in the statute. The statement is not necessary, is volunteered and is incorrect.

Even if the majority finds part of the statute fails, it does not apply the rules of severability as previously determined by this court. Since the statute contemplates two different circumstances, that is, a judge acting in the absence of a district attorney and a judge reviewing the discretion of a district attorney, the *de novo* section can be severed from the review section.

*State ex rel. Briggs & Stratton v. Noll*, 100 Wis. 2d 650, 659, 302 N.W.2d 487 (1981), states the law for determining whether the statute should be severed:

> "'A statute may be unconstitutional in part and yet be sustained with the offending part omitted, if the paramount intent or chief purpose will not be destroyed thereby, or the legislative purpose not substantially affected or impaired, [or] if the statute is still capable of fulfilling the apparent legislative intent. ...'" 82 C.J.S. *Statutes* sec. 93(a) (1953).

---

[2] *De novo* meaning "anew; afresh." Black's Law Dictionary.

"This court has adopted this rule. In *Bence v. Milwaukee*, 84 Wis. 2d 224, 233, 267 N.W.2d 25 (1978), we said:

"'There is ample precedent to permit a court to sever from an ordinance or legislative enactment that portion of an act which is unconstitutional and to declare that the remaining portion is valid. As a general matter, the determination of whether an invalid portion so infects the remainder of the legislation as to require the entire law to be invalidated is a question of legislative intent. *City of Madison v. Nickel*, 66 Wis. 2d 71, 223 N.W.2d 865 (1974); *State ex rel. Milwaukee County v. Boos*, 8 Wis. 2d 215, 99 N.W.2d 139 (1959).'"

The legislature obviously had two intents in adopting this section. The first is a *de novo* determination in the absence of a district attorney, and the second is a review of the ultimate decision of the district attorney not to issue a complaint. While the trial court should give deference to the district attorney's decision, that decision need not be controlling. Since these two portions have separate legislative intent, even if the *de novo* portion is unconstitutional, the second review portion is a proper constitutional check on the district attorney having exclusive jurisdiction to issue or deny issuance of a complaint.

An historical look at the role of the district attorney during the nineteenth century shows the majority is in error when it finds the district attorney has constitutionally granted exclusive control over the charging decision.

In *Application of Bentine*, 181 Wis. 579, 585–86, 196 N.W. 213 (1923), the court discussed the district attorney's authority in terms of choosing a complaint between variously available statutory offenses and

stated, citing Justice Marshall's opinion in *Loose v. State*, 120 Wis. 115, 130, 97 N.W. 526 (1903):

> "'Facing those situations, the legislature, presumably with full knowledge of all this court had said on the subject, in its own and superior wisdom has spoken intending to leave the prosecuting officer to exercise the administrative authority mentioned, since this court has held that such must be the result of leaving the statutes in regard to the matter as they were in 1888. They have been so left. *That authority is doubtless not unlimited.* It cannot be arbitrarily exercised. The trial court must necessarily have supervisory control over it so as to prevent any manifest abuse thereof.'" (Emphasis added.)

Also in *Bentine*, the court stated:

> "'A public prosecutor is a *quasi*-judicial officer, retained by the public for the prosecution of persons accused of crime, in the exercise of a sound discretion to distinguish between the guilty and the innocent, between the certainly and the doubtfully guilty.' *Wight v. Rindskopf*, 43 Wis. 344, 354; *Rock v. Ekern*, 162 Wis. 291, 294, 156 N.W. 197." *Bentine*, 181 Wis. at 587.

The majority fails to distinguish between the constitutional role of the district attorney and the "traditional" role the district attorney has been given by both the legislature and this court. Whatever power the district attorney has can come from three sources, in order of their precedence: the constitution, the legislature and this court. Previously, this court has only considered cases where there was a conflict between either the level of power this court gave to the district attorney in a previous case and a con-

straint proposed by the appellant, or a constraint proposed that would violate powers given by the legislature. The current case, however, is the first time the court has considered a conflict between a clear legislative mandate and whatever power was constitutionally given to the district attorney.

While the legislative mandate is clear, what power is given to the district attorney by the constitution is not. The majority finds the source of the district attorney's discretionary power in the constitution because it insists he is a member of the executive branch. However, under Article V, sec. 4, entitled "Executive ... Powers and Duties" the duty to "take care that the laws be faithfully executed" belongs to the governor.

The only mention of the district attorney, as well as the attorney general, occurs in Article VI, entitled "Administrative." Section 3 states: "The powers, duties and comensation of the treasurer and attorney general shall be prescribed by law." The district attorney is mentioned twice in Article VI, sec. 4: in regard to his two-year term and that vacancies of district attorneys are to be filled by appointment.

Two principles can be drawn from this section. First of all, it is commonly accepted that the district attorney and the attorney general fulfill analogous roles on the county and state levels. Since the legislature defines the powers and duties of the attorney general and could require either legislative or judicial review of his decisions or limit his power, it is ludicrous to say that the legislature has no power under the constitution to define the powers of the district attorney, an unnamed office in Article VI, sec. 4.

If the majority cannot accept that the attorney general is the same *sui generis* as a district attorney, it must also accept the fact that the authors of the constitution described the powers of the attorney general (as emanating from the legislature) and did not describe the powers of the district attorney within the same section. The statutory principle of *expressio unius est exclusio alterius* should apply. In fact the district attorney's powers were not mentioned and therefore the powers of the district attorney were not conferred by the constitution, but are to be granted and limited through the legislature.

This is supported by the cases cited by the majority. Legislative enactments have been the touchstone of the determination of what rights and duties the district attorney has. These were conflicts between the court and the legislature to determine if the court had a right to interfere with the powers conferred on the district attorney by the legislature.

Here, however, the legislature is merely regulating the power it initially conferred to the district attorney by statute as it metes out the power of the other county officers that are described in Article VI, sec. 4.

As stated by 27 C.J.S. sec. 10, *District and Prosecuting Attorneys* (as cited in *State ex rel. Kurkierewicz v. Cannon*, 42 Wis. 2d 368, 379, 166 N.W.2d 255 (1969)):

> "If the official duties of a prosecuting attorney are prescribed by the constitution, they cannot be increased or diminished by statute. Where, however, the constitution does not prescribe the duties of the district or prosecuting attorney, the legislature may regulate the performance of such duties,

164

and if fixed by statute, they may be increased or diminished at the pleasure of the legislature. ..."

To determine what the authors of our constitution thought the powers of the district attorney were, it is useful to determine if the district attorney's prosecutorial discretion was ever limited or mandated by statute when the constitution was passed.[3] Since the office of district attorney was never discussed during the constitutional conventions, such an analysis is the only way to determine if prosecutorial autocracy vested solely in the district attorney was contemplated by the authors.

In the statutes of 1849, ch. 145, provides:

"**SECTION 1.** For the apprehension of persons charged with offences, the judges of the several courts of record, in vacation as well as in term time, and all justices of the peace are authorized to issue process to carry into effect the provisions of this statute.

---

[3]"We have previously articulated the analysis which a court should employ in interpreting provisions of the Wisconsin Constitution. *Buse v. Smith*, 74 Wis. 2d 550, 568, 247 N.W.2d 141 (1976); *Board of Education v. Sinclair*, 65 Wis. 2d 179, 222 N.W.2d 143 (1974). We have said that the court will examine:

"'(1) The plain meaning of the words in the context used;

"'(2) The historical analysis of the constitutional debates and of what practices were in existence in 1848, which the court may reasonably presume were also known to the framers of the 1848 constitution, *see State ex rel. Zimmerman v. Dammann* (1930) 201 Wis. 84, 88, 89, 228 N.W. 593; and *State ex rel. Comstock [v. Joint School District*, 65 Wis. 631, 27 N.W. 829 (1886)]; and

"'(3) The earliest interpretation of this section by the legislature as manifested in the first law passed following the adoption of the constitution. *Payne v. Racine* (1935), 217 Wis. 550, 259 N.W. 437.' *Buse v. Smith*, 74 Wis. 2d 550, 568, 247 N.W.2d 141 (1976)." *State v. Beno*, 116 Wis. 2d 122, 136, 341 N.W.2d 668 (1984).

"**SECTION 2.** Upon complaint made to any such magistrate that a criminal offence has been committed, he shall examine on oath the complainant and any witnesses produced by him, and shall reduce the complaint to writing, and shall cause the same to be subscribed by the complainant; and if it shall appear that any such offence has been committed, the court or justice shall issue a warrant reciting the substance of the accusation, and requiring the officer to whom it shall be directed, forthwith to take the person accused and bring him before the said court or justice, or before some other court or magistrate of the county, to be dealt with according to law; and in the same warrant may require the officer to summon such witnesses as shall be therein named, to appear and give evidence on the examination."

Chapters 145 and 146 constitute most of the criminal procedure statutes of the time covering the time before arrest to actual trial. The district attorney is mentioned only once in these chapters, at ch. 146, sec. 7:

"**SECTION 7.** The district attorney and all other prosecuting officers may, in all cases, issue subpoenas for witnesses to appear and testify on behalf of the state; and the subpoenas, under the hand of such officer, shall have the same force, and be obeyed in the same manner and under the same penalties in case of default, as if issued by the clerk."

These statutes show that at the time the constitution was ratified or very shortly thereafter the magistrate was the person to draft the complaint and initiate a "prosecution." Sections 16 and 18 deal with

the duties of the magistrate when he has heard the evidence:

> **"SECTION 16.** If it shall appear to the magistrate upon the whole examination that no offence has been committed, or that there is not probable cause for charging the prisoner with the offence, he shall be discharged."
>
> **"SECTION 18.** If it shall appear that an offence has been committed, and that there is probable cause to believe the prisoner guilty, and if the offence be bailable by the magistrate, and the prisoner offer sufficient bail, it shall be taken and the prisoner discharged; but if no sufficient bail be offered, or the offence be not bailable by the magistrate, the prisoner shall be committed for trial."

It is clear then that a prisoner would have gone through the equivalent of arrest, jail, bond hearing and arraignment without statutorily or constitutionally required involvement or exercise of discretion by the district attorney. Indeed, the statutes of the period of the constitution make it unclear when the district attorney will get involved in the criminal process.

These statutes were not changed until 1889 when the entire statutes were revised. Section 4653 then described the duties of the district attorney:

> **"Duty of district attorney as to offenses; to report to court if he does not file information. SECTION 4653.** The district attorney of the proper county shall inquire into and make full examination of all facts and circumstances connected with any case of preliminary examination as provided by law, touching the commission of any offense whereon the offender shall have been committed to jail, or become recognized or held to

167

bail, and to file an information setting forth the crime committed, according to the facts ascertained on such examination and from the written testimony taken thereon, whether it be the offense charged in the complaint on which the examination was had or not; *but if the district attorney shall determine in any such case that an information ought not to be filed, he shall make, subscribe and file with the clerk of the court a statement in writing, containing his reasons in fact and in law, for not filing an information in such case*; such statement shall be filed at or before the term of the court at which the defendant shall be held for appearance for trial; *and in such case the court or presiding judge shall examine such statement, together with the evidence filed in the case, if there be evidence filed therein, and if upon such examination the court or presiding judge shall not be satisfied with such statement, the district attorney shall file the proper information and bring the case to trial*; but if the said statement is satisfactory to the court or presiding judge, said court or judge shall indorse approval upon said statement, and if at the time of such approval, the defendant in said case be confined in jail under commitment for trial in said case, the clerk of the court shall forthwith serve upon the sheriff or jailer having such defendant in custody his certificate under the seal of the court to the effect that reasons for not filing an information in said case have been approved by the court or judge, as the case may be; whereupon such sheriff or jailer shall forthwith discharge said defendant from custody." (Emphasis added.)

Even in 1889 then the district attorney was subject to some form of judicial review of his decision to prosecute. It is not clear in these statutes whether

the magistrate or the district attorney would make the decision to issue the complaint.

The constitutional history of the office of the district attorney is that it was mentioned in Article VI, sec. 4 with no power or duties spelled out. In the 1848 constitution, the entity of grand jury was established in Article II, sec. 8 and grand jury assent was needed to satisfy due process for criminal proceedings. The district attorney had no discretion as to what causes were to be prosecuted but was required to pursue all grand jury indictments.

The constitutional requirement for a grand jury system was eliminated by amendment in 1870. However, it is obvious that the decision to charge persons with criminal behavior was not constitutionally exclusively that of the district attorney. If the district attorney did not have this exclusive discretionary power under the constitution, the legislature is free to delegate such power wherever it deems necessary to "prevent concentration of unchecked power in the hands of any one branch." *Washington*, 83 Wis. 2d at 825–26. Under the challenged statute the judiciary is concurrently able to initiate a prosecution along with a district attorney which reinstates the "check" lost with the abolishment of the grand jury system. Just as the grand jury system was abolished because too much power had been delegated to the judicial branch, so must some of that power be reinstated with the judiciary, in a controlled form, to balance the "acquired" power of the district attorney. The district attorney's current power was acquired through legislative acquiescence rather than constitutional mandate. The legislature has made its will known and withdrawn its acquiescence. Since the district attorney never had an exclusive constitutional control over

the charging decision, legislative acts regarding the charging decision cannot be a "substantial encroachment" on a constitutionally delegated power.

*State v. Leicham*, 41 Wis. 565, 568 (1877) is another historical case placing the role of the district attorney in less than a constitutionally autocratic officer of the executive branch of government, but rather recognizing the potential of the office having "a very wide and very dangerous discretion." In *Leicham*, the court described the involvement of the magistrate in determining whether a criminal action will be brought and does not recognize the exclusive authority of the district attorney to make that determination.

It is clear then that the historic role of the district attorney in 19th century Wisconsin law was much less than it is today. This is significant as it does not support the exalted constitutional power the majority finds in Article VI flowing from the mere mention of the office.

In *State v. Coubal*, 248 Wis. 247, 257, 21 N.W.2d 381 (1946) the court stated:

> "It is true that the district attorney is a *quasi-*judicial officer. This court has so held in the sense that it is his duty to administer justice rather than to obtain convictions. No one would deny that there are many instances in the performance of his duty in which he may be called upon to exercise discretion. All his duties are not ministerial. *There is, however, no basis for holding that his duties in representing the state are not subordinate to legislative direction as to the cases in which he shall proceed."* (Emphasis added.)

We recognized in *Coubal* therefore the limitations of the office of district attorney being subordinate to

the cases in which he shall proceed, even though we stated it in a negative fashion. It is clear, at least in 1946 in the *Coubal* case, that this court did not believe the district attorney constitutionally had unlimited authority in the issuance of complaints. How can the constitution be changed completely in the last forty years.

I would find the statute is totally constitutional; however, if the confusing majority opinion is correct about the *de novo* character of a judge acting in absence of the district attorney, then the review portion of the statute can be severed and is constitutional. For the court to find otherwise is to ignore the stated principle of the statute and place unchecked power in the district attorney's office in regard to prosecutorial decision-making.

I am authorized to state that Mr. JUSTICE ROLAND B. DAY joins in this dissenting opinion.